[Crim. No. 26957. Second Dist., Div. One. Oct. 14, 1975.]

THE PEOPLE, Plaintiff and Respondent, v.
FRANCINE BARBARA HERRERA, Defendant and Appellant.

178

**COUNSEL**

Albert D. Silverman, under appointment by the Court of Appeal, for Defendant and Appellant.

Evelle J. Younger, Attorney General, Jack R. Winkler, Chief Assistant Attorney General, S. Clark Moore, Assistant Attorney General, Howard J. Schwab and Ellen Birnbaum Kehr, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**THOMPSON, J.**—This is an appeal from an order of probation entered on defendant's plea of guilty to a charge of possession of marijuana after her motion to suppress evidence pursuant to Penal Code section 1538.5 was denied. Defendant contends that: (1) disclosure of the marijuana is the result of a detention without established cause which was unduly prolonged while the police checked by radio for the existence of outstanding warrants; and (2) the disclosure of the contraband is the result of her not having been afforded the opportunity to post bail on a traffic warrant found to be outstanding against her. Compelling precedent requires rejection of her first contention. The second is contrary to the record.

We recite the record in the light most favorable to the determination of the trial court resolving all issues of credibility and accepting all reasonable inferences accordingly. (6 Witkin, Cal. Procedure (2d ed. 1971) Appeal, § 245.)

On December 24, 1973, Officer Randall Zink of the Baldwin Park Police Department was called to the scene of a burglary at the Western Auto store near Main and Ramona. When he responded to the call Zink saw three vehicles drive from the scene. One was a blue " '66 Chevy" with chrome wheels driven by defendant, and another a " '65 or '66 white Chevy pick up." The third vehicle was stopped leaving the area of the store and found to contain a stolen "T.V." Zink personally "took the burglary report."

At 2:20 a.m. of January 14, 1974 Zink, while on patrol, saw the " '66 Chevy" with chrome wheels and the "white '65 Chevy pick up" in the immediate area of the burglarized store. Defendant was driving the white "Chevy" with chrome wheels. Ruben Morales was driving the pickup. Zink caused the pickup to stop and defendant stopped the Chevy voluntarily, about 50 feet in front of the pickup. Zink motioned defendant to come over so that he could talk to her because the vehicle

which she was driving was "possibly related to the burglary" and he "wanted to obtain information as to who she was." He intended to complete a field interrogation card.

Zink asked defendant for identification. She told him who she was and gave an address. Zink "ran a routine warrant check" and ascertained that there was a "traffic warrant" outstanding against defendant. He advised defendant of the traffic warrant and placed defendant under arrest. Zink told defendant that the bail on the traffic warrant would be $64. Defendant gave $30, her only money except for change, to Morales. Asked by Zink if she had money to post bail, she said she did not. Zink told Morales that he could post $64 as bail to secure the release of defendant. Morales had no money except for the $30.

Zink transported defendant to the Industry sheriff's station because the Baldwin Park station had no facilities for women prisoners. Defendant was "booked" at the sheriff's station on the traffic warrant. At no time did she indicate that she could post bail or that anyone would post bail for her. During the booking process defendant was seated at a table in a room outside the "booking cage." Defendant's purse was searched and found to contain amphetamines and "other pills." As a woman deputy sheriff took defendant to another room to be searched, defendant arose and a plastic "baggie" containing 1.45 grams of marijuana fell from her person to the floor.

Defendant was charged with possession of amphetamine, possession of sodium secobarbital, and possession of marijuana. Her motion to dismiss the information pursuant to Penal Code section 995 was granted as to the counts charging possession of amphetamine and sodium secobarbital. It was denied as to the count charging possession of marijuana. Defendant's motion to suppress evidence of the marijuana was denied. Pursuant to a bargain with the prosecution defendant entered a guilty plea to a misdemeanor possession of marijuana. She was placed upon probation with a county jail sentence suspended. This appeal followed.

■ Defendant contends that the marijuana is the tainted fruit of improper police conduct. She argues that the police acted illegally in detaining her upon information not shown to have come from a reliable source, in extending the detention while they checked for outstanding warrants and in not giving her the opportunity to post bail before she was booked.

Defendant's reliance upon decisions such as *People* v. *Hunt,* 250 Cal.App.2d 311 [58 Cal.Rptr. 385] for the conclusion that Zink's cause to detain defendant is unsupported for failure to show the source of his information is misplaced. If Zink had relied upon hearsay to establish a basis to detain defendant for questioning then *Hunt* and related cases would have thrust the burden upon the prosecution to establish a credible source of the hearsay. Here the record shows, however, that Zink was relying upon his own observations.

Those observations supplied an adequate reason for the limited detention which occurred in the case at bench. ■ Circumstances short of probable cause to arrest support a temporary detention of a person for questioning when they are such as to indicate to a reasonable police officer that some out of the ordinary activity related to crime has occurred and that the person has a connection with it. (*People* v. *Manis,* 268 Cal.App.2d 653, 659 [74 Cal.Rptr. 423].) ■ Here Officer Zink had seen defendant drive off from the scene of a burglary in the company of other persons in other automobiles, one of which contained loot taken in the crime. About three weeks later he observed defendant in the same car from which she had left the burglary scene again in the immediate vicinity of the burglarized store. The time was in the small hours of the morning. Defendant was driving in company with the pickup truck that had also accompanied her car and the other vehicle leaving the site of the crime. From those unusual circumstances the trial court could properly find that a reasonable police officer could conclude that defendant had some connection with the burglary either as a witness or a suspect.

The trial court could properly find, also, that the detention was not unduly prolonged while Zink determined if warrants naming defendant were outstanding. Three lines of cases have developed discussing police checks for outstanding warrants in the course of temporary detention. Two sets of decisions dealing with detention for minor traffic violations or similar minor violations of law are possibly in conflict. One group of cases declares that a prolongation of the detention while a check is made to determine outstanding warrants is unreasonable. (See e.g., *Willett* v. *Superior Court,* 2 Cal.App.3d 555 [83 Cal.Rptr. 22]; *Pendergraft* v. *Superior Court,* 15 Cal.App.3d 237, 242 [93 Cal.Rptr. 155]; see also *People* v. *Grace,* 32 Cal.App.3d 447 [108 Cal.Rptr. 66].) Another group of decisions declares that a short detention while the officer checks for outstanding warrants is justified regardless of the minor nature of the offense for which the person is detained. (See e.g., *People* v. *Bremmer,* 30 Cal.App.3d 1058, 1061-1062 [106 Cal.Rptr. 797]; *People* v. *Gilliam,* 41

Cal.App.3d 181, 188 [116 Cal.Rptr. 317].) Still a third line of cases justifies the prolongation of a detention to check for outstanding warrants where the detention is related to a more serious offense or under more suspicious circumstances. (*Carpio* v. *Superior Court,* 19 Cal.App.3d 790, 793 [97 Cal.Rptr. 186] speed, evasive conduct, and temporary driver's license raised suspicion that warrants might be outstanding; *People* v. *Wickers,* 24 Cal.App.3d 12, 14-16 [100 Cal.Rptr. 732] robbery; *People* v. *Junious,* 30 Cal.App.3d 432, 437-438 [106 Cal.Rptr. 344] narcotic activity near school.)

We need not attempt the perhaps vain effort to reconcile the first two groups of cases. The case at bench falls within those of the third category permitting prolongation of a detention for the purposes of checking for outstanding warrants where the detention relates to a serious offense or is under more suspicious circumstances than the typical stop for a traffic violation. Here the detention related to investigation of a burglary.

■ Temporary detention for questioning is constitutionally valid only where the legitimate governmental interest in the prevention and detection of crime outweighs the limited intrusion upon individual liberty incident to a particular temporary detention. (*Terry* v. *Ohio,* 392 U.S. 1, 22-23 [20 L.Ed.2d 889, 906-907, 88 S.Ct. 1868]; see also *United States* v. *Calandra,* 414 U.S. 338 [38 L.Ed.2d 561, 94 S.Ct. 613].) The more serious the crime under investigation, the greater the governmental interest in its prevention and detection. Where the governmental interest is greater it will overbalance a greater intrusion upon the freedom of the individual. Thus, while conceivably the governmental interest in preventing violations of the traffic law may not justify prolongation of a detention to determine whether warrants are outstanding, the governmental interest in preventing burglary and in detecting those who have committed the crime justifies the intrusion. (See *People* v. *Gale,* 9 Cal.3d 788, 797-799 [108 Cal.Rptr. 852, 511 P.2d 1204].)

Defendant's contention that she was not afforded an opportunity to post bail and thereby avoid the process of booking which led to the discovery of the marijuana flies in the face of the record. Defendant was told what the bail would be. She said she did not have the funds to post it.

The judgment (order of probation) is affirmed.

Wood, P. J., and Lillie, J., concurred.