UNITED STATES of America,
Plaintiff-Appellee,

v.

Carroll James MILLER and Jerry Wayne
Smith, Defendants-Appellants.

Nos. 75–1392, 75–1393.

United States Court of Appeals,
Tenth Circuit.

Argued Feb. 24, 1976.

Decided April 1, 1976.

Stephen K. Lester, Asst. U. S. Atty., Wichita, Kan. (E. Edward Johnson, U. S. Atty., Topeka, Kan., on the brief), for plaintiff-appellee.

Leonard D. Munker, Federal Public Defender, Wichita, Kan. (Daniel J. High, Asst. Federal Public Defender, Wichita, Kan., on the brief), for defendants-appellants.

Before SETH, BARRETT and DOYLE, Circuit Judges.

WILLIAM E. DOYLE, Circuit Judge.

The defendants were convicted on February 10, 1975 of charges contained in a two-count indictment, alleging in Count I robbery of a national bank in Wichita, Kansas, contrary to 18 U.S.C. Section 2113(a), and in Count II the interstate transportation of stolen money and securities in excess of $5,000, in violation of 18 U.S.C. Section 2314.

The appellants' primary point advanced in connection with this appeal is that their arrest as they traveled out of Kansas and into Oklahoma was invalid as not based on probable cause; secondly, that the search warrant which was obtained for the purpose of searching their vehicle was not based on probable cause; and third, that they were denied a preliminary hearing soon after their arrest.

The evidence established that during the early morning of January 6, 1975, two men overpowered a security guard as he was unlocking the bank. The guard was forced inside and waited for the other employees to arrive. When the manager arrived, he was forced to open the night depository and the robbers took the accumulated deposits. Soon after this happened, the Wichita, Kansas Police Department dispatcher received a call from the manager of the Fourth National Mid-Towne Bank to the effect that the bank had been robbed five minutes earlier by two black men. One of the robbers, according to the report, had a stocking drawn over his face while the other was wearing a large black hat. The dispatcher immediately sent out a broadcast communicating this information. Due to a misunderstanding and mistake on the part of the dispatcher, the report was that there were three robbers.

At 7:18 a.m. a broadcast was sent out by the Kansas Turnpike Authority informing officers patrolling the turnpike that the suspects were driving a Ford pickup truck. A description was given of the two men. One was said to be 22 years of age, 5'11" tall, and weighing about 165 pounds. He was described as thinly built and wearing a wide-brimmed black hat and dark clothes. The second man was described as being 6' tall, stockily built and wearing striped pants.

Shortly after this broadcast, a Kansas highway patrolman, David McGlasson, encountered two men who were changing a flat tire on a Cadillac automobile. It was black vinyl in color over tan. It had Oklahoma license number YJ 8016. Officer McGlasson stopped and assisted the men in changing the flat tire on the southbound side of the highway. McGlasson's description of the men was that one was attired in a red flowered shirt, red plaid pants and a wide-brimmed black hat; the other wore a red and white striped shirt and denim jeans. They identified themselves as Jerry Wayne Smith and Carroll J. Miller and provided documentary identification. In response to his inquiry, the men said that they had entered the turnpike at Kansas City, and that they had not stayed overnight in Wichita but had come directly from Kansas City.

Due to the rear window of the automobile being frosted over, a fact which was apparent when they started away, the officer reasoned that they had not entered the turnpike at Kansas City, for if they had the frost would have melted. On that basis he radioed the tollgate at Wellington, Kansas, and requested advice as to the car's point of entry as reflected on the toll ticket and was informed that the car had come on the turnpike at the South Wichita entrance.

Shortly after that, the turnpike dispatcher contacted the Wichita Police Department dispatcher and informed him of McGlasson's experience with appellants. He also gave the description of the two men as it is given above. The Wichita dispatcher said that a revised broadcast had been issued since new information had identified these two men

as the ones who had robbed the bank.[1] The Wichita dispatcher also commented that the two men whom McGlasson had encountered could have been the robbers. The Wichita dispatcher then contacted McGlasson, who reported on his meeting with them.[2]

An independent report was received by the Deputy Sheriff for Kay County, Oklahoma, Gary Sinclair. He learned that the suspects were three black men in their 20s, one wearing jeans or a turtleneck sweater or scarf, another wearing a black hat with a white ring around the brim, and that they were travelling south on I–35 in a 1968 to 1970 black over gold or tan Cadillac with the mentioned Oklahoma license. A short time later the deputy sheriff together with an Oklahoma highway patrolman saw the car on Highway I–35 and stopped it. They saw the much mentioned large hat. Both occupants were placed under arrest.

I.

In order for an arrest to be valid, the officer making it must have prior probable cause. Probable cause exists where the facts and circumstances within the officers' knowledge and of which they had reasonably trustworthy information are sufficient to themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed. *Brinegar v. United States*, 338 U.S. 160, 175–176, 69 S.Ct. 1302, 1310–1311, 93 L.Ed. 1879, 1890–1891 (1949); *United States v. Gardner*, 480 F.2d 929 (10th Cir.), *cert. denied*, 414 U.S. 977, 94 S.Ct. 297, 38 L.Ed.2d 220 (1973); *United States v. Troutman*, 458 F.2d 217 (10th Cir. 1972). This rule is one which contemplates the balancing of interest of law enforcement with the interest of the public. *See Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 225, 13 L.Ed.2d 142, 145 (1964), quoting *Brinegar v. United States*, *supra*, 338 U.S. at 176, 69 S.Ct. at 1311, 93 L.Ed. at 1890, and also it allows each case to be considered on its own facts. *United States v. Martin*, 509 F.2d 1211, 1213 (9th Cir. 1975).

The argument is that the officers who made the arrest did not have information sufficient to link the defendants to the robbery. However, they did have the descriptions. They had the description of the car together with the license plates and these coincided with those which had been broadcast. The information acquired by other officers, including the Kansas patrolman, was part of the total broadcast at 7:40 a.m., that which was heard by Sheriff Sinclair in Oklahoma. The conclusion that these men were responsible for the robbery of the bank was based on the collective knowledge of the police and the victims. *See LaBelle v. LaVallee*, 517 F.2d 750 (2d Cir. 1975); *United States v. Troutman*, 458 F.2d 217 (10th Cir. 1972); *United States v. Sheppard*, 455 F.2d 1081 (10th Cir. 1972). It consisted of the fact of the robbery together with the descriptions of the men committing it which had been reported to the Wichita police. McGlasson had heard the dispatch, and suspected that the men he had helped with the tire had been the robbers. His suspicions were confirmed by the fact that they had lied to him about where they entered the turnpike plus his conversation with the Wichita dispatcher. The circumstances certainly added up to a determination that these were the very men who had robbed the bank, and particularly when it is evaluated through the eyes of a police officer. *See Coleman v. United States*, 137 U.S.App.D.C. 48, 420 F.2d 616, 621 (1969). McGlasson did not make the arrest; he checked out his suspicions first and it was not until after these suspicions had been confirmed that the arrests were made.

1. Persons at the bank reported that one of the robbers was about 22, 5'11", 165 pounds and was wearing a wide-brimmed black hat and dark clothes. This information was broadcast to all Wichita police officers, the Kansas Turnpike Authority, and a division of the Kansas Highway Patrol which covered a six-county area surrounding Wichita. The revised report apparently was issued after McGlasson's encounter with appellants.

2. Although the men had said that they would stop and have the tire repaired, they apparently did not do so. This is shown by the fact that they travelled the 15 miles to the tollbooth in 14 minutes.

It is important to realize that the arrests were made as the men were fleeing from the scene of an armed robbery and thus there were present exigencies calling for action. *See Coleman v. United States, supra* and *see United States v. Breedlove,* 444 F.2d 422 (5th Cir. 1971).

The cases hold that a general description of either the getaway car or the suspects is a sufficient basis for the existence of probable cause. *LaBelle v. LaVallee,* 517 F.2d 750 (2d Cir. 1975); *United States v. Maryland,* 479 F.2d 566 (5th Cir. 1973); *Keeny v. Swenson,* 458 F.2d 680 (8th Cir. 1972); *United States v. Breedlove,* 444 F.2d 422 (5th Cir. 1971); *United States v. Ayers,* 426 F.2d 524 (2d Cir. 1970); *Coleman v. United States,* 137 U.S.App.D.C. 48, 420 F.2d 616 (1969).

*Whiteley v. Warden,* 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971), relied on by appellants, was predicated on probable cause which was the product of the information of an unknown informant, but here the information was obtained from the police and the robbery victim.

II.

A Note in 87 Harv.L.Rev. 835, 837, traces the history of the automobile search exception starting with *Carroll v. United States,* 267 U.S. 132, 45 S.Ct. 280, 69 L.Ed. 543 (1925). It is based upon and continues through *Chambers v. Maroney,* 399 U.S. 42, 52, 90 S.Ct. 1975, 1981, 26 L.Ed.2d 419, 428 (1970), to *Coolidge v. New Hampshire,* 403 U.S. 443, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971), which points up the reasons constituting exigency, the main factor of which is the mobility of the automobile and the hazard of loss of the contraband. *Brinegar v. United States, supra,* recognizes the difference between searching an automobile and searching a home. The public interest in searching an automobile generally outweighs the interest of the individual in going on his way at least until he has been checked out.

Our case is similar to the situation which is found in *Chambers, supra,* except that in the case at bar a warrant was obtained for the actual search, whereas in *Chambers* a search took place after the defendant was under arrest and it was conducted without benefit of a warrant; yet the search was upheld. Considering, then, that the Kansas officers and the Oklahoma officers did not act on suspicion but rather obtained as much information as possible, and considering that the situation was one of exigency, we are of the opinion that the arrest was valid and that there was probable cause for the issuance of a warrant.

The Supreme Court has recognized that the standards applicable to the determination of probable cause in a search case are substantially similar to the standards which are applied to the arrest of the person. Both derive from the Fourth Amendment and about the same quantum of evidence is required in order to constitute probable cause. *Cf. Gerstein v. Pugh,* 420 U.S. 103, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975).

The affidavit used to obtain the search warrant recited all of the facts including the receipt of a radio dispatch, a description of the men, a description of the automobile and the information that the car was last seen going south on I–35. It was known that an undetermined amount of cash had been stolen and that the robbers were armed. It was on this basis that the roadblock was set up and the vehicle which matched the description of the defendants' car was stopped and the occupants were placed under arrest. Finally, the search revealed the security guard's hat from the bank, gun and glasses as well as a leather case which had been taken from the guard's pickup truck. The contents of the night depository, together with a brief case containing wire similar to some used in the robbery, were also found.

We are of the opinion that the facts set forth in the affidavit were sufficient to justify the issuance of the warrant. *See United States v. Neal,* 500 F.2d 305 (10th Cir. 1974), and *United States v. McCoy,* 478 F.2d 176 (10th Cir. 1973). That some of these facts were hearsay does not change the situation since the underlying circum-

stances permitted the magistrate to determine the credibility of the information. *See Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); *United States v. Harris,* 403 U.S. 573, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971); *United States v. Neal, supra.*

The affidavit stated that Sinclair's information was based on a radio dispatch informing him of the robbery in Wichita and providing him with a description of the car and the suspects. In our opinion the magistrate could rely on the reliability and credibility of a police bulletin. The fact that Sinclair may not have known that some of the information came from McGlasson rather than from the scene of the crime does not undermine the finding of probable cause. There was ample evidence from Sinclair's observation together with the information which he received to constitute probable cause even though some of it was hearsay. *See United States v. Ventresca,* 380 U.S. 102, 111, 85 S.Ct. 741, 747, 13 L.Ed.2d 684, 690 (1965); *United States v. McCoy,* 478 F.2d 176, 179 (10th Cir. 1973).

### III.

■ As to the failure to hold a preliminary hearing, it would appear that it was due to the procedure which was followed. The government filed a complaint with the magistrate on January 6, 1975, which was the same day that the robbery was committed. The appellants were delivered to federal custody and taken to Wichita the next day. On January 10 an omnibus hearing was held, and a preliminary hearing was scheduled for January 13, but on that date the complaint was dismissed and a new one was filed over the appellants' objections. The preliminary hearing was rescheduled for January 17. However, on January 16 the grand jury returned a superseding indictment. Following this, the appellants were arraigned without the preliminary hearing having been held.

Defendant's right to a preliminary hearing exists when he is charged by complaint with a major offense. *See* Fed.R.Crim.P. 5(c), 5.1; 18 U.S.C. Section 3060, but the

failure to hold such a hearing when there has been a subsequent indictment is not grounds for reversal. Fed.R.Crim.P. 5(c); 18 U.S.C. Section 3060(e); *United States v. Mulligan,* 520 F.2d 1327 (6th Cir. 1975); *United States v. English,* 501 F.2d 1254 (7th Cir. 1974); *United States v. Brumley,* 466 F.2d 911 (10th Cir. 1972). The reason for the above decisions is that once an indictment has been handed down, the purpose of a preliminary hearing—to determine whether there is probable cause for the accused's detention, 8 J. Moore, Federal Practice, par. 5.1.02; 1 Wright & Miller, Federal Practice and Procedure: Criminal, Section 80—has been fulfilled. In any event, the failure to grant a preliminary hearing is not fatal to the proceeding. True, the defendant is entitled to be discharged under Rule 5.1(b), but this does not preclude the government from instituting a subsequent prosecution for the same offense. Indeed, a conviction will not be vacated based on the ground that the defendant was detained pending trial without a determination of probable cause. *See Gerstein v. Pugh,* 420 U.S. 103, 119, 95 S.Ct. 854, 866, 43 L.Ed.2d 54, 68 (1975).

We find no error, and accordingly the judgment of the district court is affirmed.