UNITED STATES of America, Appellee,

v.

**James Edward GAINES, Appellant.**

UNITED STATES of America, Appellee,

v.

**Francis Edward MARTIN, Appellant.**

**Nos. 77–1687, 77–1745.**

United States Court of Appeals,
Ninth Circuit.

Nov. 3, 1977.

---

Claudia A. Wilken, Asst. Federal Public Defender (argued), San Francisco, Cal., Paul H. Alvarado (argued), San Francisco, Cal., for appellants.

Malcolm S. Segal, Asst. U. S. Atty. (argued), San Francisco, Cal., for appellee.

Before DUNIWAY and KILKENNY, Circuit Judges, and SKOPIL, District Judge.*

KILKENNY, Circuit Judge:

Appellants were indicted, tried and convicted in a jury trial of two robberies of a federally insured savings and loan association in violation of 18 U.S.C. § 2113(a). Pretrial motions to suppress, sever the trial, and to enjoin use in evidence of Martin's prior conviction were heard and denied.

## FACTUAL BACKGROUND

On September 7, 1976, two black men entered and robbed the State Savings and Loan Association (S&L) in Oakland, California. One of the men, later identified at trial as Gaines, held an employee at gunpoint while the other man, identified at trial as Martin, forced the other employee to sit on the floor. The two men then took money from the tellers' cash drawers and forced the two employees into the vault. During the robbery one of the men left a handprint on the bank counter. The print was identified at trial as that of Martin.

Ten days later two black men again entered the same S&L in Oakland. One of the employees who had been present during the first robbery was again on duty. She saw the two men enter the bank and testified at trial that one of the men said, "Hi, its me again." She and another teller were

* The Honorable Otto R. Skopil, Jr., Chief Judge, United States District Court for the District of Oregon, sitting by designation.

forced at gunpoint to sit on the floor while the men took cash from the tellers' drawers. The two employees and another woman who had entered the S&L during the robbery were placed in the vault. The two men left the S&L separately. Both men were identified by both employees as the appellants Martin and Gaines.

Immediately after the second robbery the owner of a funeral home located near the S&L saw one man return to a car that had been parked in the funeral home lot about ten minutes earlier. Ten minutes later the second man returned to the car and the car left the lot at a high rate of speed. The funeral home owner described the car as a yellow MG convertible and noted the license plate number.

One week later on September 24, 1976, FBI Agent Diedrich saw a car similar to the one seen leaving the funeral home lot. Diedrich requested assistance from the Oakland Police Department, and, Cole, the responding officer, was told to arrest the car's occupants if they matched the general descriptions[1] of those men suspected of the S&L robberies. Cole stopped the car and asked a few questions. The men met the descriptions and were arrested in the presence of Agent Diedrich.

Following the arrest, the two men were taken to the Oakland city jail where they were questioned by Agent Diedrich and another agent. Both agents testified that prior to any interrogation each appellant was advised of his *Miranda* rights, Gaines gave the officers a statement in which he admitted taking part in the September 7th and 17th robberies of the S&L. Additionally, he implicated Martin as his partner in both crimes. Martin denied any knowledge of the robberies and chose to invoke his right to counsel.

### THE MARTIN APPEAL

Martin assigns three errors as follows:
I. Failure to grant a separate trial.
II. Refusal to exclude from evidence a prior conviction.

III. Failure to grant a speedy trial.

#### I.

Martin's first assignment of error is that the court should have granted his motion for a separate trial. He grounds his argument mainly on the fact that he was implicated by Gaines in the latter's confession and that the confession would not have been admissible in a separate trial. Appellant completely overlooks the general rule that joint trials of persons charged together for committing the same offense expedites the administration of justice, reduces the congestion of trial dockets, conserves judicial time, lessens the burden upon citizens to sacrifice time and money to serve on juries, and avoids the necessity of recalling witnesses who would otherwise be called upon to testify only once. *See United States v. Patterson,* 455 F.2d 264 (CA9 1972); *Parker v. United States,* 404 F.2d 1193 (CA9 1968), *cert. denied* 394 U.S. 1004, 89 S.Ct. 1602, 22 L.Ed.2d 782. The same general rule is stated in *United States v. Hobson,* 519 F.2d 765, 772 (CA9 1975), *cert. denied,* 423 U.S. 931, 96 S.Ct. 283, 46 L.Ed.2d 261, where we accepted the views of the Third Circuit in *United States v. De Larosa,* 450 F.2d 1057 (1971), *cert. denied sub nom. Baskin v. United States,* 405 U.S. 927, 92 S.Ct. 978, 30 L.Ed.2d 800 (1972). That court in commenting on a similar motion said, "A defendant is not entitled to a severance merely because the evidence against a co-defendant is more damaging than the evidence against him." *United States v. De Larosa, supra,* at 1065. While a great disparity in proofs may be sufficient to allow a severance in certain cases, the prime consideration is whether the jury can reasonably be expected to compartmentalize the evidence as it relates to separate defendants in the light of its volume and the limited admissibility. *United States v. Kaplan,* 554 F.2d 958 (CA9 1977); *United States v. Campanale,* 518 F.2d 352, 359 (CA9 1975), *cert. denied sub nom. Matthews v. United States,* 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 638 (1976). *United States v. Nace,* 561 F.2d 763 (CA9 1977).

---

1. Descriptions given by employees of S&L and others.

■ The trial court was careful to protect Martin's rights. The Gaines' confession was not received in evidence. By agreement, Diedrich merely summarized its contents, omitting any reference to Martin. In these circumstances, he cannot complain. *Bruton v. United States,* 391 U.S. 123, 134, n. 10, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), fully supports the view that the writing itself would have been admissible where the prejudicial portions have been excised. Nor does the fact that Gaines failed to testify add to the weight of Martin's contention for the need of a severance. Here, as in *United States v. Kaplan, supra* at 966 [in banc rehearing denied September 7, 1977], there is nothing in the record to even remotely indicate that Gaines' testimony would exculpate Martin. In no way could Martin benefit from his codefendant's testimony as stated in his confession. To the contrary, this testimony would only serve to more deeply implicate him.

■ Moreover, counsel did not present to the lower court the arguments which he makes before us. Here, on appeal, his entire contention is based on the strength of the evidence against Gaines, the alleged weakness of the evidence against him, and Gaines' failure to testify at the trial. These arguments were not made to the lower court at the close of the testimony. It is a general rule that to preserve the point, the motion to sever must be renewed at the close of the evidence. *United States v. Figueroa-Paz,* 468 F.2d 1055, 1057 (CA9 1972). Diligent pursuit of a severance motion is a guiding principle. *United States v. Kaplan, supra* at 965.

## II.

■ Martin, prior to trial, moved to exclude from evidence, for impeachment purposes or otherwise, his 1974 burglary conviction in the state of California. The district court weighed the prejudice to the appellant of the use of such evidence against the conviction's effect on his probity and credibility and, in the exercise of his discretion, denied the motion. Inasmuch as Martin's counsel, on direct examination, in-

quired of his client and established that appellant had entered a plea of guilty to the offense, the government did not use the conviction. For that matter, the question was not even touched upon in cross-examination. Appellant cites no authority in support of his argument that the court should *sua sponte* have held a hearing on the facts leading up to the previous convictions. Authorities such as *United States v. Wilson,* 536 F.2d 883, 885 (CA9 1976), *cert. denied* 429 U.S. 982, 97 S.Ct. 497, 50 L.Ed.2d 592, and *United States v. Hatcher,* 496 F.2d 529 (CA9 1974), leave the issues of remoteness in time and similarity of charges to the sound discretion of the trial judge. The record before us fails to disclose an abuse of that discretion.

## III.

Martin argues that he was not afforded a speedy trial. The dates and events preceding his trial are undisputed. He was arrested on September 24, 1976, and indicted on October 6th of the same year. Arraignment was held on December 29, 1976. His counsel was appointed that same day, and he immediately moved for an extension of time to file motions in the case. This request was prompted by the deadline set by the magistrate to coincide Martin's motions with those of Gaines, who had been arraigned much earlier. The district court granted the additional time, and the new date for filing pre-trial motions was set for January 6, 1977. Another continuance was ordered by the court, and motions were heard on January 20th. Additional motions were argued on February 3rd. The trial was held on March 8th, 9th, and 10th, 1977.

■ The definitive test for determining the merits of a speedy trial claim was established in *Barker v. Wingo,* 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). Martin's claim fails under all of *Barker's* four tests. First, the length of the delay, 137 days, can hardly be characterized as unreasonable, especially since Martin made no claim of prejudice arising from the delay. *United States v. Carpenter,* 542 F.2d 1132, 1134 (CA9 1976), and *United States v.*

*Graham,* 538 F.2d 261, 266 (CA9 1976), *cert. denied* 429 U.S. 925, 97 S.Ct. 327, 50 L.Ed.2d 294. Second, the reasons for the delay offer no grounds for dismissal. Indeed one delay was in direct response to a request of the appellant. Third, the appellant was dilatory in asserting the alleged speedy trial violation. The record is void of any challenge to the pace of the proceedings until this appeal. Fourth, as noted, Martin made no claim of prejudice from the alleged speedy trial violation.

The Speedy Trial Act of 1974 also offers no relief to Martin. The mandatory sanctions of 18 U.S.C. § 3162 do not become effective until mid-1979 pursuant to 18 U.S.C. § 3163. Nor do the interim provisions of 18 U.S.C. § 3164 mandate a dismissal. *United States v. Carpenter, supra.*

■ If, in fact, there was a violation of the ninety day interim rule under the provisions of 18 U.S.C. § 3164(b), the proper sanction under § 3164(c) would be a release from custody, rather a dismissal of the indictment. *United States v. Tirasso,* 532 F.2d 1298, 1299 (CA9 1976); *United States v. Carpenter, supra, Id.* at 1134.

### THE COMMON APPEALS

Under this assignment, we must consider: (1) whether the officers had sufficient founded suspicion to stop the automobile; and (2) whether on questioning immediately following the stop and later identification after appellants had stepped from the automobile, the officers had probable cause to arrest.

■ Inasmuch as the bank robbery violated federal law, the FBI officer was properly the principal actor in the stop and the subsequent arrest. Accordingly, both the stop and arrest are governed by federal law. 18 U.S.C. § 3052.[2] *United States v.*

*Di RE,* 332 U.S. 581, 590, 68 S.Ct. 222, 92 L.Ed.2d 210 (1948); *United States v. Hall,* 543 F.2d 1229, 1232–34 (CA9 1976), *cert. denied* 429 U.S. 1075, 97 S.Ct. 814, 50 L.Ed.2d 793 (1977).

■ The facts and circumstances known to Agent Diedrich and Officer Cole were clearly enough to allow them to stop the automobile. Officer Cole was informed as to the color, make, and model of the automobile used in the bank robbery, and was also aware of the vehicle's license number. Although Officer Cole made the actual stop, Agent Diedrich authorized it and was present when it occurred.

A case strikingly similar to ours is *United States v. Hickman,* 523 F.2d 323 (CA9 1975), *cert. denied* 423 U.S. 1050, 96 S.Ct. 778, 46 L.Ed.2d 639 (1976). There, as here, the agents had precise information with reference to a license number on a boat suspected of drug smuggling. After police located the boat, it and its truck-trailer were kept under surveillance. Later, when the boat was moved, the agent who was watching requested the agents at the dock to stop and question the driver of the vehicle towing the boat. One of the agents pulled his car in front of the tow truck and stopped it. He asked for identification and who was the owner of the truck-trailer and the boat. Hickman replied that he was. The court concluded that the information possessed by the officers was enough to warrant the stop and to ask the preliminary questions. The court there said:

"... The cumulative impact provided the customs agents a founded suspicion for stopping the boat and truck and questioning their occupants." *Supra,* 327–28.

Even if this court were to apply the California law, the result would be unchanged. *People v. Herrera,* 52 Cal.App.3d 177, 124 Cal.Rptr. 725 (1975).

---

**2.** 18 U.S.C. § 3052. *Powers of Federal Bureau of Investigation*

"The Director, Associate Director, Assistant to the Director, Assistant Directors, inspectors, and agents of the Federal Bureau of Investigation of the Department of Justice may carry firearms, serve warrants and subpoenas issued under the authority of the United States and make arrests without warrant for any offense against the United States committed in their presence, or for any felony cognizable under the laws of the United States if they have reasonable grounds to believe that the person to be arrested has committed or is committing such felony."

The lessons of *Hickman* show that preliminary investigatory questions following a temporary stop are permissible. We now turn to the questions and events following the stop to determine if the officers had probable cause to arrest. We hold that they did.

Before Officer Cole stopped the automobile he knew its general description (make, model, and color) and its license number. After the automobile was stopped Officer Cole was able to add two additional facts to the previously possessed information. (1) Gaines, in response to certain investigatory questions, said that the automobile was owned by Janice Gamble and that only he and Gamble had driven the car in the past month, and (2) the descriptions of the robbery suspects, black males in their mid-twenties, one approximately six feet tall with a thick build and black hair, the other approximately five feet nine or ten inches tall, having a medium build and black hair, matched the vehicle's occupants. Since Gaines had acknowledged to Officer Cole that he and his girl friend Gamble[3] had the sole use of the automobile which was unquestionably linked to the bank robbery, and had possession of the vehicle in the period when the robberies were committed, the officers then clearly possessed adequate information to take the appellants into custody.

Although important, it is certainly not dispositive that some of the information leading to the officers determination of probable cause was one week old. Faced with similar facts to those before us the Tenth Circuit in *United States v. Miller,* 532 F.2d 1335 (1976), *cert. denied* 429 U.S. 1101, 97 S.Ct. 1126, 51 L.Ed.2d 551 (1977), held that there was probable cause. Here, as in *Miller,* the information as to the description of the robbers and the getaway car came from the victims and eye-witnesses and was then passed on to official police channels. Although the *Miller* court went on to observe that an important factor to consider is the elapsed time between the commission of

the crime and the subsequent arrest, the opinion makes it clear that the most significant factor is the information known to the officer making the stop, particularly when this information is evaluated after a visual identification. The *Miller* court gives great weight to the fact that the arresting officer "checked out his suspicions first" and then made the arrest. *Miller, supra,* at 1337. A police officer armed with information as to the color of a vehicle, its make and model, its license plate number, plus identification information and an occupant's own statement of use of the automobile during the period in question had probable cause to arrest, whether the stop was made within hours of the robbery or, as here, within one week. Although, in these circumstances, we are not governed by California law, it is interesting to note that under similar facts, the California court in *People v. Herrera, supra,* sustained the validity of the arrest made some three weeks after the bank robbery was committed.

As we have today held, in full reliance on *United States v. Hickman,* investigatory questions can be put to occupants when an automobile is stopped. However, appellants contend that from the instant Officer Cole stopped the car they were in custody and no investigatory questions were proper without the administration of *Miranda* warnings. We hold that the appellants were not in custody until after they had stepped from the car, had matched the general description of the robbery suspects, and Gaines had stated he had access to the car during the days of the robberies. Here we return to the teachings of *Hickman,* where it is said:

> "The circumstances were essentially the same as those presented in the usual routine highway-stop-and-inquiry situation to which *Miranda* has been consistently held inapplicable. . . .
>
> "There is nothing in the record to support appellants' contention that the agents made a prior determination to arrest appellants regardless of their responses to questioning and of the results

---

**3.** Not involved in the bank robberies.

of any legitimate search which might follow.

"Since we have determined that appellants were not in a 'police dominated' and 'compelling atmosphere' from the time they were initially stopped for questioning until the time the *Miranda* warning was given, their contention that statements made during this period were improperly admitted against them must also fail." *Id.* at 327.

Here, as in *Hickman*, there is nothing in the record to show that the officers had made a prior determination to arrest the appellants regardless of their responses to questioning. For that matter, the record shows that the arrests were not to be made unless the appellants were identified. Police officers armed with information as possessed by Officer Cole and Agent Diedrich who did not stop the vehicle for interrogation of the driver would not be performing their functions as police officers. This is true whether the stop was made within hours of the robbery or, as here, within one week. The totality of the information known to Officer Cole formed a clear basis for stopping the vehicle and, after identification, for the subsequent arrests.

Inasmuch as the stop and arrests were valid under both federal and state law, we need not discuss appellants' contention that the federal agents' participation had tainted the entire proceeding.

### THE GAINES APPEAL

Appellant Gaines suggests that the questions he answered when the vehicle was first stopped were incriminating in nature and thus tainted his later confession. Accordingly, he argues that the motion to suppress his confession should have been allowed. Here, we return to *United States v. Hickman, supra,* for the following quotation.

"Appellants contend that the questioning was inquisitorial, not investigatory. We disagree. An officer making an investigatory stop will often have some suspicion of the identity of the person apprehended and of his prior unobserved activity. It is the very purpose of the investigatory stop to allow the officer to confirm or deny these suspicions by reasonable questioning, rather than forcing in each instance the 'all or nothing' choice between arrest and inaction. . . ." 523 F.2d 323, *Id.* at 327.

█ The statement in the government's brief on which Gaines relies in his reply brief does not support his argument. To the contrary, the government's statement makes it clear that the arrests were not to be made until after the driver and other occupant of the automobile had been identified. The fact that the government did not use the Gaines' statement in evidence in no way raises a presumption of illegality. There are many reasons why the government did not use the statements, including lack of evidentiary value after the confession was received in evidence. The rule established in *Hickman* is succinctly stated in the recent case of *United States v. Jones,* 543 F.2d 1171, 1173 (CA5 1976), *cert. denied,* 430 U.S. 957, 97 S.Ct. 1604, 51 L.Ed.2d 807, where it is said:

"Jones' contention that *Miranda* was violated is without merit. Several courts including this one have ruled that *routine inquiries into the ownership of a stopped vehicle,* the identity of its driver or occupants, and other such matters by law enforcement personnel do not constitute custodial interrogation. . . ." *Id.* at 1173 [Emphasis Added].

█ Implicit in the district court's order denying the motion to suppress is a finding there was no evidence that Gaines was in a "police dominated" or "compelling atmosphere" at the time he made the statements. Inasmuch as this finding is not clearly erroneous, we have no authority to disturb it. *United States v. Wysong,* 528 F.2d 345, 348 (CA9 1976). For that matter, a finding to the contrary on the record before us would be clearly erroneous.

### CONCLUSION

The judgment of conviction against each appellant must be affirmed.

IT IS SO ORDERED.