*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 05a0259p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

        *Plaintiff-Appellant,*

    *v.*

        No. 04-6053

URIAH MARXEN,

        *Defendant-Appellee.*

Appeal from the United States District Court
for the Western District of Kentucky at Louisville.
No. 03-00058—John G. Heyburn II, Chief District Judge.

Argued: May 11, 2005

Decided and Filed: June 14, 2005

Before: SILER and ROGERS, Circuit Judges; REEVES, District Judge.[*]

_____

**COUNSEL**

_____

**ARGUED:** Thomas W. Dyke, ASSISTANT UNITED STATES ATTORNEY, Louisville, Kentucky, for Appellant. Laura R. Wyrosdick, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Louisville, Kentucky, for Appellee. **ON BRIEF:** Thomas W. Dyke, Terry M. Cushing, ASSISTANT UNITED STATES ATTORNEYS, Louisville, Kentucky, for Appellant. Laura R. Wyrosdick, OFFICE OF THE FEDERAL PUBLIC DEFENDER, Louisville, Kentucky, for Appellee.

_____

**OPINION**

_____

DANNY C. REEVES, District Judge. The United States appeals the district court's order suppressing evidence seized following a traffic stop of Appellee Uriah Marxen's vehicle and statements that Marxen made following his arrest. Because we conclude that the district court erred in suppressing the subject evidence and statements, we reverse the district court's determination and remand this action for further proceedings.

---

[*]The Honorable Danny C. Reeves, United States District Judge for the Eastern District of Kentucky, sitting by designation.

## BACKGROUND

On August 3, 2002, two persons described as a tall, thin black man and a white woman committed an armed robbery of a Dairy Mart convenience store located on Bardstown Road in Louisville, Kentucky. A witness to the robbery stated that the robbers were driving a silver or gray Nissan Altima with license number 002 FCJ. Detective Mark Hickman of the Louisville Police Department ("LPD") investigated the crime. Shortly after the robbery was reported, a police dispatcher sent out a description of the Altima, but indicated that the license number was 002 5CJ. However, in his subsequent report, Detective Hickman described the vehicle as a Toyota rather than Nissan. Detective Hickman later testified that this was simply an error on his part, inasmuch as the only information that he had been given during his investigation was that the car was an Altima.

Police determined that Uriah Marxen owned a Nissan Altima bearing license number 002 FCJ. However, Marxen – a white male – did not match the description of either of the alleged Dairy Mart robbers. On August 8, 2002, detectives from the LPD met with detectives from the Jefferson County Police Department ("JCPD") to discuss the Dairy Mart robbery and a similar string of robberies that had occurred within their jurisdiction. Based on these discussions, the detectives decided to conduct intermittent surveillance of Marxen. During this surveillance, Marxen did nothing suspicious and was not observed meeting with individuals fitting the reported description of the robbers.

On August 14, 2002, eleven days after the Dairy Mart robbery and six days after Marxen was placed under surveillance, police stopped Marxen's Nissan. Although Marxen had not committed any traffic violations, Detective Holt of the Street Crimes Unit of the LPD removed him from the driver's seat of the vehicle and immediately placed him in handcuffs. The traffic stop was accomplished by blocking Marxen's vehicle with several police cars. As Detective Holt approached Marxen's door, he observed what appeared to be a marijuana pipe on Marxen's lap. After Marxen was removed, officers discovered a bag of marijuana in a pocket beside the steering wheel. Following the discovery of marijuana in his vehicle, Marxen was placed under arrest for drug possession and taken into custody where he confessed to his involvement in several robberies, including the robbery of the Dairy Mart on August 3, 2002. Marxen was indicted on multiple counts of violating the Hobbs Act. 18 U.S.C. § 1951(b)(1). In addition, Marxen was charged with four counts of using a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c).

Marxen filed a motion to suppress the evidence obtained as a result of the stop of his vehicle. And in a separate motion, Marxen sought to suppress all statements that he made following his arrest.[1] A hearing on these motions was conducted before a magistrate judge who recommended that they be granted. The district court ultimately suppressed the evidence seized from the car and the confession over the United States' objections. The court found that the stop of Marxen's vehicle was unlawful because the police lacked reasonable suspicion to conduct a traffic stop pursuant to *Terry v. Ohio*, 392 U.S. 1 (1968).

## STANDARD OF REVIEW

When reviewing a motion to suppress, this court must consider evidence "in the light most likely to support the district court's decision," *i.e.*, in this case, in a light most favorable to Marxen. *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999) (internal quotation omitted).

---

[1] The magistrate judge and the district court addressed both motions to suppress simultaneously, concluding that the initial stop of Marxen's vehicle was unlawful and the evidence seized from his vehicle and his subsequent confessions should be excluded as fruit of the poisonous tree. Inasmuch as the Court has concluded that the officers conducted a lawful stop of Marxen's vehicle, it unnecessary to address the lower court's discussion of the fruit of the poisonous tree doctrine.

"[A] district court's factual findings are accepted unless they are clearly erroneous; however, the district court's application of the law to the facts, such as a finding of probable cause, is reviewed de novo." *United States v. Pasquarille*, 20 F.3d 682, 685 (6th Cir. 1994) (citing *United States v. Thomas*, 11 F.3d 620, 627 (6th Cir. 1993)). A district court's decision is clearly erroneous when, although there is evidence to support the finding, "the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City*, 470 U.S. 564, 573 (1985). Moreover, "[w]here there are two permissible views of the evidence" the district court's conclusions "cannot be clearly erroneous." *Id.* at 574.

## DISCUSSION

The district court concluded that the initial stop of Marxen's vehicle was not justified. In recommending that the motions to suppress be granted, the magistrate judge noted that all the police knew at the time they stopped the vehicle was that it had been used in the commission of a robbery. However, the magistrate judge focused on the fact that Marxen's description did not match that of the suspected robbers and that the robberies occurred eleven days prior to stop. The magistrate judge opined that the "police grew tired of waiting for Mr. Marxen to make a misstep and simply decided to pick him up at a time when he could be apprehended easily and with the least amount of risk to them."

The United States contends that the officers who had been investigating the Dairy Mart armed robbery had reasonable suspicion, if not probable cause, to stop Marxen's car because the vehicle had been identified as the getaway car in an armed robbery. Also, because this would make the stop lawful, the United States argues that the district court erred in granting Marxen's suppression motions.

An investigatory stop of a vehicle is permissible under the Fourth Amendment if supported by reasonable suspicion. *Terry v. Ohio*, 392 U.S. at 22. Since an investigatory stop is less intrusive to one's personal security than an arrest, the level of suspicion necessary for such a stop is "considerably less than proof of wrongdoing by a preponderance of the evidence." *United States v. Sokolow*, 490 U.S. 1, 7 (1989). For purposes of determining whether reasonable suspicion exists, the Supreme Court has instructed that a reviewing court must consider the totality of circumstances to determine whether the detaining officer has a "particularized and objective basis for suspecting legal wrongdoing." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (citations omitted). In considering all the circumstances, the question is not whether there is a possible innocent explanation for each of the factors, but whether all of them taken together give rise to reasonable suspicion that criminal activity may be afoot. *Id.* at 274-75.

In *Terry*, the Supreme Court focused its discussion on brief investigatory stops made by police officers on the basis of reasonable suspicion not amounting to probable cause for arrest. There, the reasonable suspicion arose from conduct observed by the officer who made the stop. In subsequent cases, however, the Court has clarified that a *Terry* stop is also permissible where the stop relates to a crime already completed and where the information supplying the reasonable suspicion comes from another person rather than the officer's personal observations. *See United States v. Hensley*, 469 U.S. 221, 227 (1985) (holding that an officer has the authority to make a *Terry* stop "when [he] has reasonable, articulable suspicion that the person *has been*, is, or is about to be engaged in criminal activity") (quoting *United States v. Place*, 462 U.S. 696, 702 (1983)); *United States v. Cortez*, 449 U.S. 411, 417, n. 2 (1981).

In *Hensley*, police stopped an automobile based on information obtained from a flyer indicating that Hensley was "wanted" for investigation regarding an armed robbery that had occurred twelve days earlier. The department issuing the flyer had information that Hensley had driven the getaway car in the robbery but had been unable to locate him for questioning. The

Supreme Court held that, in those instances "where police have been unable to locate a person suspected of involvement in a past crime, the ability to briefly stop that person, ask questions, or check identification in the absence of probable cause promotes the strong government interest in solving crimes and bringing offenders to justice." *Hensley*, 469 U.S. at 229. Further, the court noted that restraining police action until after probable cause is obtained would not only hinder the investigation but might also enable the suspect to flee and remain at large. In concluding that the stop of Hensley's vehicle to investigate his involvement in a past crime was a lawful *Terry* stop, the Court held that, in those circumstances, "[t]he law enforcement interests . . . outweigh the individual's interest to be free of a stop and detention that is no more extensive than permissible in the investigation of imminent or ongoing crimes." *Id.*

The principal issue in this case is whether the information possessed by the investigating officers was sufficient to provide them with reasonable suspicion for the stop. The vehicle that Marxen was driving had been identified by an eyewitness as the "getaway" car in the robbery that the officers were investigating. Specifically, the eyewitness described the getaway car as one either matching or closely resembling Marxen's vehicle in make, model and color.[2] In addition, a witness provided officers with a license number of the "getaway car" that matched the license number of a vehicle registered to Marxen.[3]

Marxen did not match the description of either of the two robbers who were actually observed by witnesses. In addition, during their surveillance, police were unable to confirm that Marxen had physical contact with anyone fitting the description of the individuals described by witnesses of the Dairy Mart robbery. Likewise, they did not observe Marxen engage in any suspicious activity. It is equally noteworthy that while witnesses were able to provide a description of two of the individuals involved in the Dairy Mart robbery, no description was given of the person driving the getaway vehicle.

During oral argument, Marxen's attorney contended that the stop of the vehicle was not a *Terry* stop. She noted that Marxen was pulled over by a number of officers who boxed in his vehicle and, therefore, the stop cannot be classified as a brief investigatory stop within the structure of *Terry v. Ohio, supra*. Further, she noted that, at the time Marxen was stopped, eleven days had passed since the Dairy Mart robbery had occurred. Thus, counsel contended, any reasonable suspicion that the officers possessed shortly after the robbery had evaporated. The mere passage of time, however, does not negate the lawfulness of the stop under the circumstances presented. Rather, the time between the commission of the crime and the subsequent stop is simply one factor for this court to consider in determining whether officers had specific and articulable facts which constituted a reasonable suspicion that Marxen's vehicle had been involved in criminal activity.[4]

---

[2]Marxen's attorney stated during oral argument that the subject vehicle was actually blue, not silver as identified by the witness. The actual color of the car is not clear from the record. However, it appears that any discrepancy regarding the color of the car is immaterial inasmuch as officers were certain that Marxen's vehicle matched the description of the vehicle identified by the witness as the "getaway car."

[3]The police dispatcher initially reported the license number as 002 5CJ. However, the record reflects that the witness actually reported the license number of the getaway car to the investigating officer as 002 FCJ, which was the license number of the vehicle registered to Marxen.

[4]In *Hensley*, the Supreme Court discussed this issue and noted that the justification for a stop does not evaporate when the crime is completed. The Court further noted that "[a] brief stop and detention at the earliest opportunity after the suspicion ar[ises] is fully consistent with the principles of the Fourth Amendment." *Hensley*, 469 U.S. at 234. *Hensley* is not undermined where, as here, police are not able to locate the suspect vehicle immediately after the robbery and during a time within which contraband and other fruits of the crime are more likely to be found. Under such circumstances, the difference in a traffic stop occurring eleven days – as opposed to one or two days – following the criminal activity is not dispositive.

Two decisions from the Ninth Circuit are of some benefit in resolving the issue presented here. In *United States v. Hickman*, 523 F.2d 323, 324 (9th Cir. 1975), *cert. denied*, 423 U.S. 1050 (1976), agents had precise information concerning a license number on a boat suspected of drug smuggling. The agents were able to determine that in fact the "supposedly unique registration number matched two boats, not just one. 523 F.2d at 327. The agents located both boats. Later, when one of the boats was moved, the agent conducting surveillance asked agents at the dock to stop and question the driver of the vehicle towing the boat. One of the agents pulled his car in front of the truck and stopped it. The agent then requested identification from the driver and asked who owned the truck and boat. Hickman replied that he was the owner of both. The court concluded that the information possessed by the officers was sufficient to warrant the stop and to ask preliminary questions.

Citing *Hickman*, the court in *United States v. Gaines*, 563 F.2d 1352, 1354-55 (9th Cir. 1977), reached a similar result. In *Gaines*, officers were investigating two robberies that occurred ten days apart at a Savings and Loan in Oakland, California. As a result of their investigation, officers were aware of the make, model, color and license number of a car driven by the two men involved in the robbery. One week later, one of the investigating officers observed a car matching the description of the subject vehicle. The officer stopped the car and questioned the occupants about the robberies. The occupants matched the description of the bank robbers. 563 F.2d at 1355. During this questioning, the officer obtained additional information that he believed warranted taking the individuals into custody. The *Gaines* Court concluded that the totality of the information known to the officer warranted the stop of the vehicle.

While of some assistance, neither *Hickman* nor *Gaines* is directly on point. In *Hickman*, there was the strange circumstance of two boats having identical registration numbers. In *Gaines*, the occupants of the vehicle matched the description of the bank robbers. We are therefore faced with a novel question: whether the police are permitted to make *Terry* stops to investigate completed crimes when the police have reasonable suspicion to believe only that the stop will produce evidence of a crime, and do not have reasonable suspicion to believe that the person so stopped has committed a crime. We conclude that they are. Until a crime such as an armed robbery is solved, the at-large robbers present a threat to the public safety. Although Marxen himself was not believed to be one of the robbers, the stop of his car could clearly lead to evidence that would permit the police to locate the robbers, and therefore protect the public from the threat the robbers posed. The law enforcement interests at stake were therefore still significant, and outweigh the individual's interest to be free of a stop. *Hensley*, 469 U.S. at 229.

Here, the police were reasonably certain of the make, model and general color of the automobile used in the Dairy Mart robbery. This description matched Marxen's vehicle. Moreover, the police were aware that the license number of the getaway vehicle was either identical (002 FCJ), or nearly identical (002 5CJ) to the license number of Marxen's vehicle.[5] When reviewing whether reasonable suspicion for a stop exists, this court must give "due weight" to an officer's determination. *See Arvizu*, 534 U.S. at 273-274 (citing *Ornelas v. United States*, 517 U.S. 690, 699 (1996)). The Court has held that an officer's specialized training and experience may permit him to make inferences from and deductions about the cumulative information available to him that "might well elude an untrained person." *Arvizu*, 534 U.S. at 273 (citing *United States v. Cortez*, 449 U.S. 411, 418 (1981)). Having considered the totality of the circumstances and given due weight

---

[5]Whether the police believed that the car used in the robbery had a license number of 002 FCJ or 002 5CJ does not affect the court's assessment that the police had reasonable suspicion to stop Marxen's vehicle. Trained police officers are aware that a witness observing a getaway vehicle may see some, but not all, letters and numbers correctly. While a minor error may be due to the excitement of the moment, failing eyesight, insufficient lighting, obscured license numbers, or some other factor, identification of five of six letters and numbers in proper sequence is sufficient identification of a license plate.

to the factual inferences of the officers, we find that the officers had reasonable suspicion to believe that Marxen's car was involved in the robbery.

Furthermore, although it is not clear that there was reasonable suspicion to believe that Marxen himself was involved in the robberies, the police had reasonable suspicion to believe that the stop of Marxen's vehicle may produce evidence of a past crime. Under these circumstances, a *Terry* stop is permissible. *See Hensley*, 469 U.S. at 227-29. In summary, we conclude that police are permitted to conduct a *Terry* stop to investigate completed felonies if they have reasonable suspicion to believe that the vehicle stopped was involved in criminal activity and the stop may produce evidence of a crime even if officers do not have reasonable suspicion to believe that the owner and/or driver of the vehicle was directly involved in the criminal activity.

Within a short time after stopping the vehicle, the record reflects that the officers observed in plain view marijuana and drug paraphernalia. At that point, there was probable cause to arrest Marxen. The fact that Marxen was handcuffed prior to the officers having probable cause to arrest him does not affect the legitimacy of the *Terry* stop. *See United States v. Foster*, 376 F.3d 577, 587 (6th Cir. 2004); *Houston v. Clark County Sheriff Deputy John Does 1-5*, 174 F.3d 809, 815 (6th Cir. 1999) (holding that "the use of handcuffs [does not] exceed the bounds of a *Terry* stop, so long as the circumstances warrant that precaution.") Where, as here, officers have reason to believe a vehicle has been used in an armed robbery and that the subject robbers have not been apprehended, the officers may take reasonable precautions for their own protection. Such reasonable precautions include drawing and displaying weapons, the immediate removal of the occupants from the subject vehicle, and placing the occupants in handcuffs. Further, the fact that several police cars (as opposed to one) were used to accomplish the *Terry* stop does not alter this analysis. The measures utilized by the police did not convert the *Terry* stop of Marxen's vehicle into an unlawful arrest under the facts presented.

Finally, because the stop and subsequent arrest of Marxen were lawful, the district court erred in suppressing the evidence seized from his vehicle. Likewise, the district court erred by suppressing his subsequent confession as fruit of an allegedly unlawful arrest.

## CONCLUSION

Accordingly, we **REVERSE** the order of the district court granting Marxen's motions to suppress and **REMAND** this matter for further proceedings consistent with this opinion.