[Crim. No. 29098. Second Dist., Div. Three. Dec. 27, 1976.]

THE PEOPLE, Plaintiff and Respondent, v.
EDITH MERLE SUTTON, Defendant and Appellant.

## Counsel

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Andrew Mason and H. Reed Webb, Deputy Public Defenders, for Defendant and Appellant.

Burt Pines, City Attorney, Ward G. McConnell and Gerry L. Ensley, Deputy City Attorneys, for Plaintiff and Respondent.

## Opinion

**POTTER, J.**—This appeal from a judgment of the Municipal Court of Los Angeles Judicial District is before us by certification from the Appellate Department of the Superior Court of Los Angeles County pursuant to rules 63(a) and (c), California Rules of Court.

Appellant, Edith Merle Sutton, was convicted by jury verdicts of violating Penal Code section 273a (endangering a child) and Penal Code section 272 (neglect of a child). Essentially all of the evidence relating to either charge was a product of observations made by Sergeant Earl Blackwell at appellant's home at the time of her arrest. A motion to suppress all such evidence was made by defendant pursuant to Penal Code section 1538.5 and was denied. The sole question presented by this appeal is the propriety of that denial.

The evidence at the 1538.5 motion consisted of the testimony of Sergeant Blackwell of the Los Angeles Police Department. Blackwell received a radio report from the radio communications division advising him that there were "small children left alone" at 7830 South Western Avenue, apartment number 2. This call was received about 2 a.m., and Blackwell proceeded to that address since there were no other available units in the neighborhood. He arrived within a few minutes, parked, and examined the premises. He ascertained that it was a 10-unit apartment building and proceeded to apartment number 2. He knocked on the door, waited several minutes and then knocked again. There was no response. He observed that there were lights on in the front room and in the bedroom. He heard a television or radio playing inside. When he received no response in about 10 minutes, he checked the other apartments to see if anyone would come out "to tell me who called" and he also looked for the manager's apartment but could not identify one.

He then returned to his police vehicle and initiated radio communications seeking further details. While he was engaged in this process, another car drove up and stopped about 30 feet behind him. There were two occupants, one a man and the other a woman. The woman got out of the car and headed for the apartments. When Blackwell ascertained that the woman was going to apartment 2 he approached the door behind her. He observed her open the door with her key and start to enter.

Blackwell arrived at the door at the point appellant had almost closed it—it was open "a matter of a few inches." He knocked on the door and at the same time put his foot in the door to prevent closure. Blackwell who was in uniform announced that he "was there on a radio call about children left alone," and identified himself as a police officer. He asked appellant who she was and if she lived there. Appellant responded that she lived there but did not give her name. During this conversation Blackwell testified he was "on the doorway. I had my foot in the door." In the interval Blackwell was inquiring as to appellant's name he opened

the door. He estimated that 30 to 40 seconds elapsed or were consumed by this process. Before crossing the threshold Blackwell observed that there was considerable trash and dirty clothes strewn about the kitchen area, and a baby bottle in the living room.

Blackwell also observed that appellant's "speech was slurred. There was a very strong odor of alcohol beverage about her breath, and she had a hard time hanging onto the door." Blackwell was of the opinion that appellant was "in a condition I considered unsafe to care for the children." Upon crossing the threshold, Blackwell proceeded directly through the living room into the bedroom, where he found appellant's two children. The children, aged 6 and 16 months respectively, were alone in the bedroom, one of them lying on a bed and the other in a crib.

Blackwell then examined the conditions in the kitchen where he found "dirty dishes in the sink, dried food in the pans on the stove." He opened the icebox and ascertained that it was empty except for a quantity of milk. He found no one present in the apartment other than appellant and the two children.

The evidence upon which appellant's conviction was based consisted largely of Blackwell's testimony and observations of others based upon matters discovered by him. Photographs of the children and conditions in the apartment made by the scientific investigation division of the police department, called in by Blackwell, were also received in evidence. Blackwell informed appellant that she was under arrest and she and the children were transported to the police station by a second unit called for that purpose.

### Contentions

Appellant contends that her constitutional right to be immune from unreasonable search and seizure was violated when Sergeant Blackwell "put his foot in the doorway and pushed open the door," because "it was only *after* the officer had made his intrusion that the officer obtained any additional facts to corroborate his anonymous telephone call." The People assert "full comportment by all police herein with every Fourth Amendment principle."

### Discussion

The trial court heard the testimony of Sergeant Blackwell and denied the motion to suppress. ■ In reviewing this determination, we must

accept "the trial court's resolution of all questions of credibility of witnesses and the permissible inferences drawn by it from the testimony at the hearing." (*People* v. *Freeny,* 37 Cal.App.3d 20, 24 [112 Cal.Rptr. 33].) "Generally the ruling of a trial court upon a motion implies a finding of fact favorable to the prevailing party on each ground or theory underlying the motion." (*People* v. *Manning,* 33 Cal.App.3d 586, 601 [109 Cal.Rptr. 531].) "Appellate review of a ruling made under section 1538.5, Penal Code, is limited to whether there is substantial evidence in the record to justify such ruling." (*People* v. *Junious,* 30 Cal.App.3d 432, 436 [106 Cal.Rptr. 344].) Consequently, we will imply that the trial court found in favor of the People on all issues presented by the motion to suppress, and limit our inquiry to the question whether there was substantial evidence to support such findings.

■ Appellant did not demand a showing of the foundation for the official report of "small children left alone" received by Sergeant Blackwell on the police radio. Consequently the rule stated in *People* v. *Collin,* 35 Cal.App.3d 416, 420 [110 Cal.Rptr. 869] is applicable. There the court said: "In the instant case defendant did not, at the time of the hearing of the motion pursuant to Penal Code section 1538.5, specifically challenge the prosecution to present evidence that the officer who originally furnished the information transmitted over the police radio had probable cause to believe that defendant had committed a felony or that he was in possession of facts amounting to circumstances short of probable cause which would have justified him making the detention. The thrust of defendant's attack on the detention, as appears in his memorandum of points and authorities filed in the municipal court in support of his motion, was that the initial stop of defendant exceeded its lawful scope when the detention was prolonged past what was reasonable to the performance of the officer's official duties. Accordingly, the prosecution was not required to present as a witness the officer who initiated the original broadcast or the officer who had the conversation with the mail carrier. As applied to this case, it must be assumed that the officer who initiated the broadcast had adequate cause to detain defendant and that, accordingly, he could properly delegate the detention to Officer Fischer. . . ."

As applied to this case, appellant's failure to demand a *Remers-Madden*[1] showing requires us to assume that the officer who originated the radio report had probable cause to believe that there were, in fact,

[1] *Remers* v. *Superior Court,* 2 Cal.3d 659 [87 Cal.Rptr. 202, 470 P.2d 11]; *People* v. *Madden,* 2 Cal.3d 1017 [88 Cal.Rptr. 171, 471 P.2d 971].

small children left alone at appellant's apartment. Consequently, appellant's argument in her brief that there was an absence of "additional facts to corroborate his anonymous telephone call" at the time Sergeant Blackwell put his foot in the door erroneously assumes that there was any requirement for corroboration. Blackwell was entitled to treat the official report as reliable information based upon a citizen-informant's report appropriately verified by the officer who received it. As such it required no corroboration. (*People* v. *Ramey,* 16 Cal.3d 263, 269 [127 Cal.Rptr. 629, 545 P.2d 1333].)

■ There were, moreover, corroborative circumstances known to Sergeant Blackwell at the time he restrained appellant from closing her door. He had verified the fact that if there were occupants in appellant's apartment, they were not capable of responding to his repeated knocks on the door. This was consistent with their being "small children" too young to respond. Further, he observed appellant's return to the apartment after an absence at least as long as the duration of his presence in the vicinity of the apartment. Appellant's entry into the apartment with a key prima facie indicated that she was an occupant. There was, therefore, probable cause to arrest appellant for a violation of Penal Code section 273a, which was being committed in the officer's presence. Section 273a makes it a criminal offense to place a child "in such situation that its person or health is endangered" or even to permit a child to be "placed in such situation that its person or health may be endangered." Upholding the constitutionality of this provision, this statewide court stated in *People* v. *Beaugez,* 232 Cal.App.2d 650, 658 [43 Cal.Rptr. 28]: " . . . And by applying the 'rule of reason' to the whole provision we construe its meaning as a whole to condemn the intentional placing of a child, or permitting him to be placed, in a situation in which serious physical danger or health hazard to the child is reasonably foreseeable. This is the construction of intent which the context of the statute as a whole justifies, and so construed we find it not void for vagueness." (Fn. omitted.) Certainly Sergeant Blackwell had probable cause to believe that the small children reportedly left in appellant's apartment had been placed by her in a position where it was reasonably foreseeable that there was physical danger to such small children.

At the time Sergeant Blackwell acted our Supreme Court had not decided *People* v. *Ramey, supra,* 16 Cal.3d 263; that decision, prohibiting warrantless entries into a home to make an arrest absent "exigent circumstances" is specifically made applicable "only to arrests made after this opinion becomes final." (16 Cal.3d at p. 276, fn. 7.)

■ Blackwell was therefore authorized "to break open the door" for the purpose of making the arrest in compliance with Penal Code section 844. We find no difficulty in upholding the trial court's determination that there was substantial compliance with section 844 in this case. Blackwell was in uniform, he identified himself as a policeman and stated his purpose to take action concerning reported children left alone, and his conduct implied demand for entry. Under such circumstances we hold that it is unnecessary for an officer to permit the door to be closed in order to demand that it be re-opened. (*People* v. *Glasspoole,* 48 Cal.App.3d 668, 673, 674 [121 Cal.Rptr. 736].)

Blackwell, therefore, was legitimately observing that which was in plain view as he stood at the threshold of appellant's apartment and his further actions must be judged in light of the information that he thereby acquired. First, he saw a baby bottle on a table in the living room. This served reasonably to indicate that the "small children," or at least one of them, was an infant still being bottle-fed. This was consistent with the failure of any occupant to respond to his repeated knocking. In addition, Blackwell observed appellant's high degree of intoxication which had, in his opinion, reached the state that she was incapacitated to care for infant children. The trial court's implied finding that his belief in that respect was in good faith and reasonable is fully supported by his testimony. He was aware that infant children had already been left alone for a substantial period of time as a result of which a life threatening crisis could already exist which an intoxicated adult might well fail to appreciate or adequately cope with. By making it a criminal offense to permit a child to be placed in a situation that "its person or health *may* be endangered" (italics added), Penal Code section 273a expresses the strong public policy of this state to protect helpless infants in such a situation. Consistent with that policy. Sergeant Blackwell had no choice other than to check the condition of appellant's children.

Moreover, Blackwell was obliged to effect an arrest of appellant as a result of the information he had received and his own observations. There was no way she could be taken into custody without making provision for the care and protection of infant children in her apartment. The performance of his duties therefore required Sergeant Blackwell to determine the status of the children and make provision for their care.

Blackwell's entry into the bedroom was therefore justified under the doctrine of necessity recognized by our Supreme Court in *People* v. *Roberts,* 47 Cal.2d 374, 377 [303 P.2d 721]. There the court said:

"Necessity often justifies an action which would otherwise constitute a trespass, as where the act is prompted by the motive of preserving life or property and reasonably appears to the actor to be necessary for that purpose."

The circumstances justifying entry in *Roberts* (knowledge that a sick person resided in an apartment and hearing moans) are difficult to compare with the situation created by infant children being left alone. There are, however, two appellate decisions applying the principles stated in *Roberts* to factual situations more nearly related to the one at bench.

In *People* v. *Smith,* 7 Cal.3d 282 [101 Cal.Rptr. 893, 496 P.2d 1261], an order suppressing evidence found in the defendant's apartment was affirmed. The People attempted to justify the entry on the basis that a six-year-old child had been locked out. There was no peril to the child, however, since she was being taken care of by the landlord and by the police. The possibility that her mother was in difficulty in the apartment was belied by the girl's statement that she was not at home and by the lack of any evidence indicating she had returned. The Supreme Court stated the limits of the rule of necessity as follows (7 Cal.3d at pp. 285-286): "The solicitude of the police for the girl's safety and welfare was of course commendable. But the police must also be concerned with the interest of her parent in the security and privacy of her home, an interest expressly protected by constitutional command. (U.S. Const., 4th Amend.; Cal. Const., art. I, § 19.) The issue, therefore, is not simply whether the conduct of Officer Brown might have been 'reasonable' under all the circumstances, but whether the People have shown that his entry into Mrs. Blinn's home falls within one of the 'few specifically established and well-delineated exceptions' to the warrant requirement. (*Katz* v. *United States* (1967) 389 U.S. 347, 357 [19 L.Ed.2d 576, 585, 88 S.Ct. 507]; accord, *Vale* v. *Louisiana* (1970) 399 U.S. 30, 34 [26 L.Ed.2d 409, 413, 90 S.Ct. 1969]; *Camara* v. *Municipal Court* (1967) 387 U.S. 523, 528-529 [18 L.Ed.2d 930, 935-936, 87 S.Ct. 1727], and cases cited.) Among those exceptions is the emergency doctrine. (*Vale* v. *Louisiana, supra,* 399 U.S. at p. 35 [26 L.Ed.2d at p. 414].) But the exception must not be permitted to swallow the rule: in the absence of a showing of true necessity—that is, *an imminent and substantial threat to life, health, or property*—the constitutionally guaranteed right to privacy must prevail." (Italics added.)

Directly in point is the decision of this court in *In re Dawn O.,* 58 Cal.App.3d 160 [128 Cal.Rptr. 852]. Evidence of conditions found in defendant's apartment was received in a juvenile dependency hearing after a motion to suppress it was denied. It was found unnecessary to pass upon whether "the exclusionary rule does or does not apply to juvenile dependency hearings" inasmuch as the entry was found legal. A five-year-old child who customarily stayed at her playmate's home from 3:15 p.m. until dark went home about 5:15 p.m., but returned to her playmate's home after about an hour. The housekeeper kept her until 10 p.m. when she called the juvenile authorities. The juvenile officer talked to the child on the way to her parents' apartment. The opinion does not state upon what basis, but does state "he gathered the impression that she had a sister." After knocking several times without result, the juvenile officer entered and found two infants who had been left alone. In upholding the trial court's ruling denying suppression, the court said: "Where the police do not have a warrant, the burden rests on the prosecution to show justification for the search. (*Badillo* v. *Superior Court,* 46 Cal.2d 269, 272 [294 P.2d 23].) 'It is well settled that emergencies of overriding magnitude may justify a search conducted without prior judicial approval. [Citations.]' (*Jacobs* v. *Superior Court,* 36 Cal.App.3d 489, 495-496 [111 Cal.Rptr. 449].) There must be a 'showing of true necessity—that is, an imminent and substantial threat to life, health or property . . .' (*People* v. *Smith,* 7 Cal.3d 282, 286 [101 Cal.Rptr. 893, 496 P.2d 1261].) We have such a showing in the instant case.

"Dawn had been locked out of her house. Officer Dean felt from his conversation with Dawn on the way to the apartment that she had a sister. He knocked several times at the door before entering by another door pointed out to him by Dawn. There were lights on in the apartment. This situation is different from *People* v. *Smith, supra,* 7 Cal.3d at page 287, where lack of an answer to a knock was held not to warrant an assumption that the adult inside had 'suddenly fainted, fallen sick, or otherwise become incapacitated to the point of rendering her unable to care for her daughter and in need of police assistance.' In the instant case, the sister might still be in the apartment unattended, as indeed she and another sister were. While the entry in *Smith, supra,* might be unreasonable, we think the actions of the officers in the instant case were both reasonable and commendable.

"In the matter at bench we are not concerned with justification for a search. There was no search made, tried or intended. The only issue is whether the entry was reasonable. If so, the observations of the condition

of the place were proper. An effort to return a small child to its home after it has been found locked out, lonely and unattended is not unreasonable. Further, under such facts, it is not unreasonable to determine if the child may be safely left at its home. The discovery of the unattended child here reasonably gave rise to the concern that another child might be unattended in the house.

"*People* v. *Smith,* 7 Cal.3d 282 [101 Cal.Rptr. 893, 496 P.2d 1261] is distinguishable. The Supreme Court there flatly said that 'the record is otherwise' than that 'of a child in distress, crying, lonely and hungry.' At bench but for the humanitarian care by Mrs. Rowell the child would have been in distress, crying, lonely and hungry. In *Smith,* the court declared that the officer knew no one was home, because he was so told by the child. Here the officers had no knowledge if anyone was home; and if a child should be there, they did not know what the conditions were for its safety and welfare. In *Smith,* the officers were let into the apartment by the apartment manager at about 5 p.m. Here, the officers were let in by the little girl at about 10:30 p.m. This is a late hour for a small child to be required to take care of herself. The lateness of the hour makes any concern for her, her brothers or sisters, and about the presence of her parents and the conditions of her home much more reasonable than might be in the case of an entry at 5 p.m." (58 Cal.App.3d at pp. 163-164.)

The facts found sufficient to support the entry in *In re Dawn O.* are less persuasive than those with which Sergeant Blackwell was dealing. The five-year-old child's statement that she had a sister, without stating any facts indicating that any such sister was in the apartment, was less basis for "concern that another child might be unattended in the house" than the reliable police report which Sergeant Blackwell had received. The court's ruling on the suppression motion in this case was therefore more supportable than it was in *In re Dawn O.* Accordingly, we find no error therein.

We do not by this holding imply that any different standard for application of the rule of necessity exists in cases involving child endangering. ■ Entry for the purpose of the protection of infant children must be justified on the same grounds as any other entry; there must be "an imminent and substantial threat to life, health or property." We conclude, however, as did the court in *In re Dawn O.,* that the facts reasonably indicating that an infant child may be unattended constitute

such a substantial threat, and that such threat is not dissipated by the return of a custodial parent in a state of obvious intoxication.

The judgment is affirmed.

Ford, P. J., and Allport, J., concurred.

A petition for a rehearing was denied January 13, 1977, and appellant's petition for a hearing by the Supreme Court was denied March 17, 1977.