[Civ. No. 49080. Second Dist., Div. Five. Feb. 28, 1977.]

THE PEOPLE, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
LUIS ALONZO TORRES, Real Party in Interest.

[Crim. No. 28699. Second Dist., Div. Five. Feb. 28, 1977.]

THE PEOPLE, Plaintiff and Appellant, v.
PEDRO MAGALLON, Defendant and Respondent.

COUNSEL

John K. Van de Kamp, District Attorney, Donald J. Kaplan, Eugene D. Tavris and Sterling S. Suga, Deputy District Attorneys, for Petitioner and for Plaintiff and Appellant.

No appearance for Respondent.

Bernard F. Kemper for Real Party in Interest.

Wilbur F. Littlefield, Public Defender, Harold E. Shabo, Michael Adelson and G. Keith Wisot, Deputy Public Defenders, for Defendant and Respondent.

OPINION

KAUS, P. J.—Torres and Magallon were charged as codefendants with two counts of robbery. (Pen. Code, § 211.) In case No. 28699 the People have appealed (Pen. Code, § 1238, subd. (a)) from the order granting Magallon's motion to dismiss (Pen. Code, § 995); in case No. 49080 they have petitioned for a writ of mandate (Pen. Code, § 1538.5, subd. (o)) to overturn the order granting Torres' motion to suppress evidence. The motion to suppress was submitted on the preliminary hearing transcript, thus the facts in both of the matters before us are identical, although the standards for reviewing the trial court's actions differ. (*People* v. *Superior Court,* 3 Cal.App.3d 476, 488 [83 Cal.Rptr. 771]; *People* v. *Reynolds,* 276 Cal.App.2d 825 [84 Cal.Rptr. 331].)

Audrey Sheedy and Glenda Foster testified that they were walking together on 6th Street in Los Angeles about 10:20 p.m., February 11, 1976, when their purses were snatched by two males of Latin descent. Both witnesses identified Torres as one of their assailants. They had previously identified him in a lineup the day after they were robbed. Neither could identify Magallon at the lineup or at the preliminary hearing. Sheedy identified People's exhibit No. 1 as a photograph of the wallet she had had in her purse at the time of the robbery and People's exhibit No. 2 as some rosary beads which were also in her purse when it was taken. Foster testified that the purse taken from her was depicted in People's exhibit No. 3. She identified People's exhibit No. 4 as a wallet which was in the purse at the time of the robbery.

Torres and Magallon were passengers in the rear seat of an automobile which was stopped by Beverly Hills police officers because it lacked rear license illumination.[1] Upon approaching the car, which contained a total of four male occupants, Officer Van Ausdelf observed a child's small wooden baseball bat on the front seat between two of the car's occupants. He saw a bicycle chain with a taped handle and a wire loop on the rear floorboard. The officer knew that such chains were used as weapons, the wire loop fitting over the user's wrist and the tape being affixed to prevent cutting the user's hand. There was also an iron bar about a foot long on the rear floorboard. When the driver was asked for his license he opened the car door. A regulation size baseball bat fell out of the car. Because of the variety of potential weapons available in the car, Van Ausdelf and his partner requested all of the occupants to get out, conducted a pat-down search and asked them all for identification. The only one who had identification was the driver.

The officers observed a lady's wallet on the rear seat and asked if any of the occupants knew whose wallet it was. No one answered. Van Ausdelf then reached into the car and got the wallet (People's exh. No. 4) to see if there was any identification inside. It contained an I.D. card with a woman's picture and the name Glenda Foster. The officer then questioned the individuals as to their reason for being in the area. They were arrested on suspicion of robbery after giving what the officer deemed conflicting responses. A search of the car disclosed the set of rosary beads (People's exh. No. 2) in the heater hose. The wallet belonging to Sheedy (depicted in People's exh. No. 1) was taken from Magallon during booking. Foster's purse (depicted in People's Exh. 3) was found in the trunk of the car.

The trial court granted Magallon's section 995 motion on the ground that the officers lacked probable cause to arrest him. It ordered People's exhibits Nos. 2, 3 and 4 suppressed.[2] The court also ruled that testimony regarding the victims' observation of Torres in the lineup which followed the arrest would be inadmissible.

[1]The arresting officer testified that the vehicle was stopped at 7:40 p.m., February 11, 1976. The discrepancy between this testimony and that of Sheedy and Foster as to the time of the robbery was never resolved, but it is obvious someone was mistaken. Resolution of the conflict is not necessary to our disposition of the matters before us.

[2]Surprisingly, the court ruled that the photograph of Sheedy's wallet (People's exh. No. 1) was admissible because Magallon first revealed its existence to the officers by removing it from his pocket when they asked him for identification. No significance was attached to the wallet by the officers at that time, however. They did not take it from him until after his arrest which the trial court held to be without probable cause.

■ In ruling on the motion to suppress, the trial court found that the initial detention for the traffic violation was justified, that in view of the potential weapons in the car the officers were justified in ordering the occupants out, and that they were reasonable in concluding that People's exhibit No. 4 was a lady's wallet. The court held, however, that these facts did not justify their seizing and examining People's exhibit No. 4 or their arresting the car's occupants. We disagree.

*People* v. *Ortega,* 2 Cal.App.3d 884 [83 Cal.Rptr. 260], presents a comparable situation. In *Ortega* officers responded to a "robbery now" call. At the scene they found a car containing three males. A fourth man was in a nearby phone booth. The officers ordered the three occupants from the car and frisked them. They then observed a wallet on the floor of the car from which a driver's license protruded. The picture on the license was not of any one in the car. Each of the suspects denied ownership of the wallet. An officer seized it and then discovered a gun under the seat. The court ruled that upon learning that the wallet and license did not belong to any of the suspects, the officer had reasonable cause to believe that it had been stolen and he was then justified in reaching into the car to retrieve it. This despite the fact that there was nothing at the scene to tie the suspects to the "robbery now" call other than their presence in the area.

Defendants seek to distinguish *Ortega* on the basis of the "robbery now" call which led to the detention there.[3] The Beverly Hills police officers in the present case had no knowledge of a recent robbery. This factor is immaterial, however, since the only function which the "robbery now" call served in *Ortega* was to justify the initial detention. The detention in the present case was justified by the traffic violation. Thereafter the investigation here paralleled that in *Ortega,* except that here the weapons were observed first, then the wallet, whereas in *Ortega* the wallet was observed first and, in retrieving it, the officer discovered the weapon.

*People* v. *Bello,* 45 Cal.App.3d 970 [119 Cal.Rptr. 838]; *People* v. *Grace,* 32 Cal.App.3d 447 [108 Cal.Rptr. 66]; and *People* v. *Lingo,* 3 Cal.App.3d 661 [83 Cal.Rptr. 755], relied on by defendants, are not

---

[3]The wallet found in *Ortega* had, in fact, been taken in a robbery some 24·hours earlier.

helpful to their cause. In *Bello* and *Grace* the arresting officers discovered, upon stopping the vehicles, that no traffic violation had occurred and they therefore had no further reason for detaining the defendants. In *Lingo* the court found that the detention for the traffic offense was valid and that inquiry regarding a phonograph and radio on the car seat would have been appropriate, but that an inquiry, out of the blue, about narcotics, totally unrelated to any observations the officers had made, exceeded the officers' legitimate authority. To the extent that *Lingo* is relevant to the instant case, it is supportive of the People's position.

The officers' discovery of the weapons in the instant case occurred before they could complete their duties regarding the traffic violation. Their observation of the wallet took place while they were in the process of taking necessary precautions to protect themselves from the potential danger posed by the weapons. The detention was not excessively long nor did the officers conduct range too far afield from their original purpose in stopping the car. The unexplained presence of the wallet, coupled with the weapons, provided an adequate justification for seizing the wallet; examination of the wallet provided justification for arresting the car's occupants and for searching the interior of the car. The trial court, therefore, erred in granting Magallon's motion to dismiss and in suppressing People's exhibits Nos. 2 and 4.[4]

A different situation exists, however, with respect to People's exhibit No. 3. There are no "specific" articulable facts" in the record upon which the motion to suppress was submitted which might reasonably have led the officers to conclude that there were seizable items in the trunk. (*Wimberly* v. *Superior Court,* 16 Cal.3d 557, 568 [128 Cal.Rptr. 641, 547 P.2d 417].) The court thus acted properly in suppressing People's exhibit No. 3.

In *People* v. *Magallon* (2d Crim. No. 28699) the order appealed from is reversed. In *People* v. *Superior Court* (2d Civ. No. 49080) let a peremptory writ of mandate issue directing respondent court to vacate that portion of its order of June 10, 1976, suppressing People's exhibits Nos. 2 and 4 in the matter entitled People v. Luis Alonzo Torres, No. A

---

[4]Since we deem the arrest legal, the superior court no doubt will want to reconsider its ruling regarding the admissibility of evidence concerning the lineup identification.

324797, and enter a new and different order denying the motion to suppress as to those items.

Stephens, J., and Ashby, J., concurred.

A petition for a rehearing was denied March 15, 1977.