[Crim. No. 20129. First Dist., Div. One. Dec. 31, 1980.]

THE PEOPLE, Plaintiff and Respondent, v.
LEO SUENNEN, Defendant and Appellant.

COUNSEL

Garrett C. Dailey, under appointment by the Court of Appeal, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Edward P. O'Brien, Assistant Attorney General, William D. Stein and Carol M. Slatin, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

**NEWSOM, J.**—Appellant Leo Suennan entered pleas of guilty to charges of burglary (Pen. Code, § 459), receiving stolen property (Pen.

Code, § 496), and possession of a firearm by a felon (Pen. Code, § 12021), and admitted three prior felony convictions. He appeals from the judgments of convictions entered on those guilty pleas. The sole argument presented by appellant is that the trial court improperly denied his pretrial motion to suppress.

The following facts are pertinent to the search and seizure issues raised on appeal: On the evening of February 26, 1979, Officer Jerry Hummel of the Concord Police Department observed that a 1970 Pontiac Bonneville approaching a stop sign appeared to be modified below rim height in violation of Vehicle Code section 24008. For that reason, the officer made a traffic stop of the vehicle at 7:54 p.m. The vehicle did not delay in responding to the officer's red light; no furtive movements on the part of either driver or the passenger were observed.

Officer Hummel approached the automobile and asked the driver, appellant, for his license and registration; codefendant Ronald Hohstadt was sitting in the front passenger seat on the right side. Identification obtained from the occupants indicated they were from Vallejo.

As the officer stood at the driver's side, he observed, in plain sight, the following: a large (eight-inch blade) knife in a sheath on the seat between the two occupants; a pair of dark leather gloves; two cans of beer (at least one of which was open); and a large partially filled pillowcase placed upright on the right front floorboard at the feet of the passenger.

In response to Officer Hummel's inquiry, the occupants said they were coming from Pittsburg. However, the officer testified appellant's route of travel on Matheson Road indicated the two were coming from a residential area in Concord.

Based upon his observations of the partially full pillowcase, the weapon and the gloves, and his knowledge that the defendants were from outside the area, Hummel suspected that a burglary had just been committed—particularly since he had previously received information during police-briefing sessions concerning a recent series of evening, residential "pillowcase burglaries" in the Concord area.

While appellant was being escorted to the rear of the car, a "cover" officer (Foley) arrived at the scene. Hummel immediately informed Officer Foley to remove the passenger and pat-search him for weapons. The pat-search of Hohstadt uncovered two flashlights and two screw-

drivers which were seized. No weapons or contraband were found as the result of a pat-search of appellant.

Once appellant was removed to the rear of the vehicle, and prior to writing a traffic citation, Officer Hummel—at approximately 7:56 p.m.—requested warrant checks on each suspect. At 7:59 p.m. he was advised by dispatch of an outstanding traffic warrant for the arrest of appellant. Once confirmation of the warrant was received at 8:04 p.m., appellant was arrested, handcuffed and placed in the patrol car.

Officer Hummel then proceeded to appellant's vehicle to seize the alcohol containers, remove the weapon, and "examine the contents." The officer removed the two beer cans in plain sight, and then pushed the pillowcase slightly to check behind it for additional alcohol. He noted that the pillowcase "contained numerous objects, was approximately half full."

After removing the beer cans, Officer Hummel returned to the vehicle and opened the pillowcase. The pillowcase was merely folded over rather than tied or otherwise secured; Hummel simply lifted the fold to look inside. He observed therein "numerous items, boxes of jewelry, boxes of coins, a stamp collection, rings, a box of .22 caliber ammunition; and there were some personal belongings in there, some socks, mouthwash, toiletry items."

The officer also uncovered a loaded .22 caliber pistol under the right front (passenger) seat.

Hohstadt was thereupon arrested for possession of a concealed, loaded gun and the officers took custody of the pillowcase, gun, gloves, beer and knife, and locked appellant's vehicle. The trunk was also searched, but no evidence pertinent to the present appeal was found.

On these facts, appellant asserts that the detention and search of his vehicle and its contents were unlawful. Appellant contests neither the original traffic stop nor the officer's request that appellant alight from the vehicle—both of which we think were unquestionably proper. Appellant's first claim is, instead, that the pat-search of passenger Hohstadt by Officer Foley was improper.

■ "That officers have the right to conduct a pat-down search, under proper circumstances, cannot be denied." (*People* v. *Craig* (1978)

86 Cal.App.3d 905, 912 [150 Cal.Rptr. 676].) However, sufficient cause for such an intrusion must be shown. "A frisk following a detention for investigation 'is an additional intrusion, and can be justified only by specification and articulation of facts supporting a reasonable suspicion that the individual is armed.'" (*People v. Smith* (1973) 30 Cal.App.3d 277, 279 [106 Cal.Rptr. 272].)

This basic legal standard, enunciated in *Terry v. Ohio* (1968) 392 U.S. 1, 27 [20 L.Ed.2d 889, 909, 88 S.Ct. 1868], has been restated often as follows: "The officer need not be absolutely certain that the individual is armed. The issue is whether a reasonably prudent man under the circumstances would be warranted in his belief that his safety or that of others was in danger." (*People v. Allen* (1979) 50 Cal.App.3d 896, 902 [123 Cal.Rptr. 80]; *People v. Hubbard* (1970) 9 Cal.App.3d 827, 830 [88 Cal.Rptr. 411]

█ Officer Hummel's observations following the traffic stop, coupled with his prior knowledge, provided sufficient cause for conducting a pat-search. He was aware of recent local pillowcase burglaries from briefings and station house discussions. The plain view observation of a half-filled pillowcase and dark gloves on the vehicle floor, along with the conflict between appellant's account of his whereabouts and the officer's knowledge of the area, gave rise to a reasonable suspicion that the suspects may have been involved in a burglary. Officer Hummel had also observed beer cans, at least one of which had already been opened, and a large buck knife in the vehicle within easy reach of the occupants. Moreover, it was dark, and two officers did not outnumber the suspects so as to negate any threat or danger.

Based upon the officer's reasonable suspicion that he may have been dealing with burglars, and his knowledge that the suspects had at least one weapon within reach, the pat-search of passenger Hohstadt was justifiable self-protection. (*People v. Remiro* (1979) 89 Cal.App.3d 809, 829 [153 Cal.Rptr. 89]; *People v. Satchell* (1978) 81 Cal.App.3d 347, 354 [146 Cal.Rptr. 307]; *People v. Superior Court (Torres)* (1977) 67 Cal.App.3d 620, 624-625 [136 Cal.Rptr. 779]; *People v. Myles* (1975) 50 Cal.App.3d 423, 430 [123 Cal.Rptr. 348].) Officer Foley properly acted upon the knowledge which Hummel imparted to him and the request to conduct a pat-search. (*Whiteley v. Warden* (1970) 401 U.S. 560, 568 [28 L.Ed.2d 306, 313, 91 S.Ct. 1031]; *People v. Hill* (1974) 12 Cal.3d 731, 748 [117 Cal.Rptr. 393, 528 P.2d 1]; *People v. Baird* (1971) 18 Cal.App.3d 450, 454 [95 Cal.Rptr. 700].) Foley was also en-

titled to seize and remove the "hard objects"—two flashlights and two screwdrivers—as they were justifiably perceived as potential weapons (*People* v. *Hill, supra*, at p. 747; *People* v. *Allen, supra*, 50 Cal.App.3d 896, 902.)

■ Citing the recent California Supreme Court holding in *People* v. *McGaughran* (1979) 25 Cal.3d 577 [159 Cal.Rptr. 191, 601 P.2d 207], appellant also contends that he was unreasonably detained while a warrant check was run.

We recount the evidence in chronological sequence: the traffic stop was made at 7:54 p.m., the warrant check was requested at 7:56 p.m. (just as Officer Hummel was preparing to issue the vehicle citation), information from dispatch as to the outstanding traffic warrant was received at 7:59 p.m., and the warrant was confirmed at 8:04 p.m. Appellant claims that *McGaughran* dictates suppression of all subsequently seized evidence because the traffic warrant procedure would have taken only "two to three minutes" to complete.

In *People* v. *McGaughran, supra*, 25 Cal.3d 577, our high court relied upon Vehicle Code section 40504 to declare that a warrant check which exceeds the time necessary to complete the officer's duties constitutes an unreasonably prolonged detention. It was the court's ruling that a detention which was continued for approximately 10 minutes after completion of the traffic citation procedure was unlawful.

The court recognized, however, that a detention which furnishes sufficient cause to prolong the investigation beyond the time required to issue a traffic citation may properly continue while a warrant check is run. The basis of the court's suppression ruling was that "... [when the officer] extended the detention beyond the period necessary to perform his duties arising from the traffic stop, he did *not* do so on 'specific and articulable facts' that would support a rational suspicion that defendant and his companion were involved in some activity relating to crime." (*People* v. *McGaughran, supra*, 25 Cal.3d 577, 591.)

*McGaughran* does not condemn all traffic detentions which are prolonged by the time required to obtain a response on a warrant check, but only those which are not justified by "specific and articulable facts" justifying a "rational suspicion" of criminal activity. Such facts were lacking in *McGaughran*; they are present in the case at bench.

First, the open alcohol container justified a further detention and search of the vehicle, as appellant concedes. Of greater importance, the observations and information which justified the pat-search, along with the flashlights and screwdrivers which were the product of that lawful intrusion, clearly supported an additional period of detention for the purpose of allowing the officer to investigate his "rational suspicion of criminal activity." (*People* v. *Burnett* (1980) 107 Cal.App.3d 795, 800-801 [165 Cal.Rptr. 781]; *People* v. *Herrera* (1975) 52 Cal.App.3d 177, 181-182 [124 Cal.Rptr. 725]; *People* v. *Wickers* (1972) 24 Cal.App.3d 12, 16 [100 Cal.Rptr. 732].)[1]

*McGaughran* disapproves of warrant checks which exceed the time necessary to complete traffic citation duties, but it casts no doubt upon the propriety of a detention which is prolonged to investigate a rational suspicion of criminal activity. The warrant check here under scrutiny falls within the latter category and was, therefore, proper.

Appellant next argues that even if the detention and pat-search were lawful, the search of the vehicle was not supported by probable cause. We disagree.

■■ ■■■ Following the detention and lawful pat-search, Officer Hummel was in possession of the following facts: (1) there had been a number of recent pillowcase burglaries in the area,[2] (2) a half-filled pillowcase was observed on the right front floorboard of appellant's vehicle along with dark gloves, beer containers and a knife, (3) passenger Hohstadt was in possession of two flashlights and two screwdrivers, (4) the suspects were from outside the area, and (5) appellant claimed to have come from Pittsburg, while the officer's knowledge of the area and appellant's direction of travel told him that the suspects had come from a residential area.

---

[1]*Herrera* was cited with apparent approval in *McGaughran*, but factually distinguished.

[2]Appellant contends that Hummel had no personal knowledge of pillowcase burglaries, and, therefore, could not rely on this information in support of his cause and decision to search the vehicle. It is well-established that police officers may rely upon information received through official channels, such as other officers, to provide probable cause, as long as the information so received is supported by reasonable indicia of reliability. (See *People* v. *Lara* (1967) 67 Cal.2d 365, 374-375 [62 Cal.Rptr. 586, 432 P.2d 202]; *People* v. *Bigham* (1975) 49 Cal.App.3d 73, 77 [122 Cal.Rptr. 252].)

The *Harvey/Madden* rule cited by appellant requires the source of information transmitted to the officer to testify. However, a "*Harvey*" objection must be raised at the

The officer also testified that it was a dark but relatively warm night (for gloves), which further aroused his suspicions. We note, however, that Hummel had not seen the suspects before, and had no report of a pillowcase burglary that night.

■ The test for probable cause to search is well established and was recently reiterated by the California Supreme Court as follows in *Cleaver* v. *Superior Court* (1979) 24 Cal.3d 297, 307-308 [155 Cal. Rptr. 559, 594 P.2d 984]: "It is axiomatic that the search of an automobile—whether pursuant to a warrant or not—must be supported by probable cause. (*People* v. *Dumas* (1973) 9 Cal.3d 871, 884...; *Dyke* v. *Taylor Implement Co.* (1968) 391 U.S. 216, 221....) ■ We recently noted that probable cause exists to conduct a warrantless automobile search 'where an officer is aware of facts that would lead a man of ordinary caution or prudence to believe, and conscientiously to entertain, a strong suspicion that the object of the search is in the particular place to be searched....'" (*People* v. *Dumas, supra*, at p. 885 [109 Cal.Rptr. 304, 512 P.2d 1208].) This court is bound to uphold the trial court's finding of probable cause if it is supported by substantial evidence. (*People* v. *Gale* (1973) 9 Cal.3d 788, 792 [108 Cal.Rptr. 852, 511 P.2d 1204]; *People* v. *Diaz* (1980) 101 Cal.App.3d 440, 445 [161 Cal.Rptr. 645].)[3]

Appellant concedes that Officer Hummel had sufficient cause to seize the beer cans. The officer's right to conduct a further examination of the vehicle to ascertain whether additional open beer cans were in the car cannot be questioned. (*People* v. *McNeal* (1979) 90 Cal.App.3d 830, 840, fn. 3 [153 Cal.Rptr. 706].) The concealed .22 caliber pistol discovered under the seat pursuant to that search was also clearly subject to seizure.

trial level, not for the first time on appeal. (See *People* v. *Sutton* (1976) 65 Cal.App.3d 341, 347 [134 Cal.Rptr. 921]; *People* v. *Moore* (1970) 13 Cal.App.3d 424, 436 [91 Cal.Rptr. 538].) The record discloses no demand for testimony of the source of the information made by defense counsel. The officer was entitled to rely on such information, and the lack of an objection below precludes any finding of impropriety at the appellate level. (*People* v. *Sutton, supra*, at p. 347; *People* v. *Bigham, supra*, at p. 77; *People* v. *Moore, supra*, at p. 436.)

[3]It may be well to note that we are not here concerned with the higher standard of probable cause applicable to the search of a locked trunk. (Cf. *Wimberly* v. *Superior Court* (1976) 16 Cal.3d 557, 566 [128 Cal.Rptr. 641, 547 P.2d 417].)

We are of the opinion that the seizure of the pillowcase was also supported by sufficient cause. The presence of burglar tools in the vehicle in the possession of passenger Hohstadt, along with the pillowcase, the weapon, and Officer Hummel's knowledge of prior pillowcase burglaries, furnished the latter with sufficient facts to entertain a strong suspicion that the fruits of a burglary would be found in the pillowcase. The officer's dual sources of knowledge—his information regarding prior burglaries, reinforced by his observations on the scene—supplied the requisite probable cause for the search. (See *People* v. *Superior Court (Torres), supra,* 67 Cal.App.3d 620, 625; *People* v. *Smith* (1970) 4 Cal.App.3d 41, 48 [84 Cal.Rptr. 229].)

Appellant relies on *People* v. *Mickelson* (1963) 59 Cal.2d 448 [30 Cal.Rptr. 18, 380 P.2d 658], and *People* v. *Huff* (1978) 83 Cal.App.3d 549 [147 Cal.Rptr. 316]. Both are readily distinguishable from the present case. In Mickelson, none of the officer's observations corroborated the information that a burglary had occurred. In *Huff*, neither the pat-search nor the officer's observations uncovered corroborating or incriminating evidence; moreover, the officer searched two blue paper bags pursuant to a report which noted that a purse and *grocery* bag had been taken from the victim.[4]

The trial court's ruling on the probable cause issue is supported by substantial evidence, and will therefore be sustained.

Appellant's final contention is that even if the seizure of the pillowcase was proper, the search and subsequent examination of its contents were improper. He cites in this respect recent California Supreme Court decisions in *People* v. *Dalton* (1979) 24 Cal.3d 850 [157 Cal. Rptr. 497] and *People* v. *Minjares* (1979) 24 Cal.3d 410 [153 Cal. Rptr. 224, 591 P.2d 514], and consonant United States Supreme Court cases.[5] These decisions have narrowed the long standing rule that accorded police officers the right to conduct a warrantless search of the passenger compartment of a lawfully detained automobile, so long as probable cause and exigent circumstances were demonstrated. The pre-

---

[4]The court in *Huff* emphasized that the officer's observations were not consistent with the robbery report and gave him no reason to connect the defendant's vehicle with the crime report. The contrary is true in the present case.

[5]*United States* v. *Chadwick* (1977) 433 U.S. 1 [53 L.Ed.2d 538, 97 S.Ct. 2476]; *Arkansas* v. *Sanders* (1979) 442 U.S. 753 [61 L.Ed.2d 235, 99 S.Ct. 2586].

cise state of the law on this important question is, however, not yet settled, nor, arguably, can it be stated in such manner as to be applicable to every claimed instance of illegal search and seizure.

In *Minjares*, the court declared invalid the search of luggage found in an automobile because the luggage was already in the exclusive control of the police. Reliance was placed upon the United States Supreme Court decision in *United States* v. *Chadwick, supra*, 433 U.S. 1, 15 [53 L.Ed.2d 538, 550-551], as follows: "'*Chadwick* stands for the proposition that a warrantless search of personal property should be the exception and not the rule. Where, as here, the authorities are in control of the situation, they must obtain a warrant prior to searching luggage or similar personal property either on the scene or back at the stationhouse.'" (*Id.*, at p. 418.)

Shortly thereafter, in *People* v. *Dalton, supra*, 24 Cal.3d 850, the court ordered suppression of evidence found in closed boxes seized from a vehicle trunk stating: "Paralleling this court's reasoning in *Minjares*, the Supreme Court in *Sanders* reiterated the distinctions drawn in *Chadwick*—that individuals have a greater privacy interest in closed luggage and that luggage, by its nature, may be more easily reduced to the control of police. '[A]s we noted in *Chadwick*, the exigency of mobility must be assessed at the point immediately before the search— after the police have seized the object to be searched and have it securely under their control. See 433 U.S., at 13.'" (*Id.*, at p. 856.)

The full dimensions of the *Minjares/Dalton* rule have been precisely defined. ■ It is clear that closed "personal effects" otherwise lawfully seized from a vehicle may not be searched in the absence of exigent circumstances. However, nothing in these recent cases grants protected status to *all* closed containers in plain view seized in an automobile. Such constitutional protection is only accorded those closed containers in which an objectively reasonable expectation of privacy might be claimed. As explained in *People* v. *Diaz* (1980) 101 Cal.App. 3d 440, at page 447 [161 Cal.Rptr. 645]: "[I]mplicit in the Supreme Court decisions concerning warrantless searches of closed personal effects once within the exclusive possession of the officer, is the critical determination that the very *nature* of the object seized supported a rational belief or expectation that its contents were to be free from uninvited inspection and that such expectation was manifestly reasonable. Clearly, while personal luggage and a variety of closed containers may meet the requisite test of reasonableness, not *every* object serving

the function of a closed receptacle will automatically fall within the ambit of constitutional protection simply because its physical form forecloses an open or public examination. (Cf., *Arkansas* v. *Sanders, supra*, 442 U.S. 753, 764-765 [61 L.Ed. 235, 245, fn. 13; *United States* v. *Neumann* (8th Cir. 585 F.2d 355 [no protectible privacy interest in an unsecured department store box in plain view in automobile].) As one commentator has noted, whether in a given factual instance a reasonable privacy expectation may be said to exist under the *Katz* standard of justifiable reliance, is largely a matter of value judgment."[6]

█ Reverting, then, to the facts of the instant case, an unsecured pillowcase partially filled with hard objects, does not in our view command the expectation of privacy which courts have granted to such sundry items as luggage (*People* v. *Minjares, supra*, 24 Cal.3d 410, 423), and an athletic bag (*Bell* v. *Superior Court* (1980) 101 Cal. App.3d 238, 244 [161 Cal.Rptr. 455]). While the pillowcase, like those items, was "closed" in the sense that its contents were not in plain view, unlike them it was not secured and bore no other objective indication of a desire for privacy, but was merely loosely folded over at the top.

More significantly, a pillowcase—save for occasional use as a laundry bag—is not commonly used as a receptacle for items in which a strong privacy interest is manifest. Moreover, the totality of the circumstances observed by the arresting officers at the arrest scene rendered unlikely the intended use of the pillowcase for any important or private or confidential purpose. (*People* v. *Robbins* (1980) 103 Cal.App.3d 34, 39 [162 Cal.Rptr. 780].)[7]

---

[6]The court's reference is to Professor Amsterdam's *Perspective On the Fourth Amendment* (1974) 58 Minn. L.Rev. 349, 402.

[7]In *Robbins, supra*, plastic-wrapped packages were not granted the status of private effects. The court emphasized that the appearance of the package and the circumstances of the seizure revealed "that appellant could not have held a reasonable expectation of privacy with respect to the contents." (*Id.*, at p. 40.) Citing *Arkansas* v. *Sanders, supra*, the court noted: "'[n]ot all containers and packages found by police during the course of a search will deserve the full protection of the Fourth Amendment. Thus, some containers (for example a kit of burglar tools or a gun case) by their very nature cannot support any reasonable expectation of privacy because their contents can be inferred from their outward appearance. Similarly, in some cases the contents of a package will be open to "plain view," thereby obviating the need for a warrant.'" (*Id.*, at p. 39.)

Although the line at which containers become "personal effects," complete with "privacy interests," is "perplexing at best" (*People* v. *Diaz, supra*, 101 Cal.App.3d 440, 447), we conclude that appellant's pillowcase falls outside the scope of the constitutional protection contemplated by *Minjares* and *Dalton*. The present search seems to us more akin to the lawful searches of plastic wrapped packages in *Robbins*, the paper cup in *Diaz*, and the department store box in *United States* v. *Neumann, supra*, 585 F.2d 355, 360.[8]

Accordingly (based both upon the reduced expectation of privacy and the presence of exigent circumstances), we find that the "closed container" rule does not render the instant search unlawful.

And, finally, since we find no merit in appellant's contentions that the vehicle and pillowcase searches were unlawful, we also conclude that any subsequent admissions made by appellant to Parole Officer Bellman were not the fruits of impermissible police activity and were properly admitted in evidence.

The judgment is affirmed.

Racanelli, P. J., and Grodin, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied February 25, 1981.

---

[8]If extended comparison of the relative expectations of privacy in cups and bags, sandwich wrappers, shoe boxes and shaving cases seems eccentric or frivolous, we can only reply that the Founding Fathers, in framing the Fourth Amendment, laid upon us this sometimes heavy burden, and that while the containers are often trivial the interests at stake in a free society are not.