**UNITED STATES**

v.

**Staff Sergeant William B. GAMMON, FR 542–56–3289 United States Air Force.**

**ACM S25834.**

U.S. Air Force Court of Military Review.

Sentence Adjudged 20 Sept. 1982.

Decided 6 July 1983.

Miller, J., concurred in result and filed opinion.

Appellate Counsel for the Accused: Mr. David L. Horley, Tucson, Arizona. Colonel George R. Stevens and Captain John V. Sullivan.

Appellate Counsel for the United States: Colonel Kenneth R. Rengert and Lieutenant Colonel Andrew J. Adams, Jr.

Before HODGSON, HEMINGWAY and MILLER, Appellate Military Judges.

DECISION

HODGSON, Chief Judge:

Contrary to his pleas the accused was convicted of wrongfully possessing marijuana and violating a general regulation by possessing drug abuse paraphernalia in violation of Articles 134 and 92, U.C.M.J., 10 U.S.C. §§ 892, 934. The approved sentence extends to a bad conduct discharge, confinement at hard labor for three months and 15 days, forfeiture of $200.00 per month for six months, and reduction to airman first class.

In a single assigned error the accused contends that the search of his on-base quarters was unlawful. Under the unique circumstances of this case, we agree.

The facts are undisputed and disclosed that Mrs. Linda K. Shaheen is the secretary to the Provost Marshal at Fort Huachuca, Arizona, and is a part-time clerk of the Federal Magistrate's Court at the installation. In her capacity as clerk she processes traffic citations. On 15 March 1982, she telephoned the accused's on-post residence to discuss a traffic citation he had received. She spoke with the accused's son who said he was nine years old, that he was there

with his sister who was eight, and that his parents were at work. Mrs. Shaheen was concerned about the children being alone so she asked where they lived and gave them her phone number in case they needed anything. There was no indication that the children were frightened, upset or in trouble.

The record also established that Mrs. Shaheen and the NCOIC of the Military Police Operations, whom she notified about the situation, both mistakenly believed that leaving children unattended violated a post regulation. Mrs. Shaheen's discussion with the Military Police resulted in Sergeant Walzer, a military policeman, being sent to the accused's quarters to investigate the report of unattended children.

Walzer, considering it to be a "routine matter," went to the accused's residence at about 1000 hours. Upon arrival he rang the door bell and when nobody answered, he checked the door which was unlocked; he did not enter the premises.

In a stipulation of expected testimony Walzer acknowledged:

I did not move to the back of the house. I did not attempt to look into the house through the sliding glass door which was located in the rear ... I did not look in the surrounding areas to see if the children were playing. I did not attempt to locate the parents. I did not inquire with the family in the other half of the ... duplex as to the whereabouts of the children or the parents. Nor did I ask neighbors if they knew of the children's whereabouts.

More importantly, Walzer admitted that he treated the situation as routine and not once did he believe an emergency existed. According to him, he was simply following orders to check a report of unattended children. He had no information or reason to believe that the children were afraid or were threatened. He did not believe them to be in danger. Walzer radioed the desk sergeant what he had done and was instructed to enter the residence. He found no sign of a struggle, no blood, odors or any other indication that the children had been abused, neglected or in danger. *See People v. Brooks*, 7 Ill.App.3d 767, 289 N.E.2d 207 (1972); *People v. Schrantz*, 15 Mich.App.3d 227, 213 N.W.2d 257 (1973). He checked the kitchen and dining area where he saw the telephone work numbers of the accused and his wife on a message board. He did not attempt to contact the parents.

Thinking that they might be hiding, he checked the children's bedrooms and their closets. He then looked in the master bedroom closet and saw marijuana plants and drug abuse paraphernalia that had been hidden there. The children were not in the house.

The Government contends that Walzer's entry into the accused's residence was permitted under Mil.R.Evid. 314(i), and the fact that no emergency was found to exist did not invalidate the reasonableness of his actions. In *United States v. Rodriquez*, 8 M.J. 648 (A.F.C.M.R.1979), a pre-rules decision, we stated:

It is clear that police may enter a dwelling without a warrant to render emergency aid and assistance to a person they *reasonably believe* to be in distress and in need of that assistance. In applying the emergency doctrine the question that must be answered is whether there is evidence that would lead a *prudent and reasonable* official to see a need to act. Citations omitted. (Emphasis supplied.)

This principle is codified in Mil.R.Evid. 314(i) which provides:

Rule 314. Searches Not Requiring Probable Cause

\* \* \* \* \* \*

(i) *Emergency searches to save life or for related purposes.* In emergency circumstances to save life or for a related purpose, a search may be conducted of persons or property in a good faith effort to render immediate medical aid, to obtain information that will assist in the rendering of such aid, or to prevent immediate or ongoing personal injury.

■ Certainly, police officials have the right and the duty to enter a residence in an emergency situation. Under such cir-

cumstances any contraband discovered is admissible. In *United States v. Mons,* 14 M.J. 575 (N.M.C.M.R.1982), the Navy-Marine Court of Military Review held admissible evidence obtained under Mil.R.Evid. 314(i). There a barracks room was entered when individuals outside the door heard emotional cries for help coming from the other side. The door was opened and the accused was found on the floor apparently suffering a seizure, the room was in disarray and blood was scattered over a large area. The court held that the resulting search was not prosecutorial in nature, but was directed toward discovering information that would assist the injured parties.

█ The pivotal issue, of course, is the existence of emergency or exigent circumstances. In *Mons, supra,* those circumstances were apparent; the same is not true in the case at bar. The fact that Walzer found no emergency existed when he entered the residence would not make his initial entry unlawful provided it was based on a reasonable belief that there was, in fact, an emergency. As Chief Justice (then Judge) Burger stated in *Wayne v. United States,* 318 F.2d 205 (D.C.Cir.1963):

> Acting in response to reports of "dead bodies," the police may find the "bodies" to be common drunks, diabetics in shock, or distressed cardiac patients. But the business of policemen and firemen is to act, not to speculate or meditate on whether the report is correct.

A myriad of situations can fall within the terms of "emergency or exigent circumstances," and we will not attempt to enumerate them all. It will suffice to say that if reasonable grounds exist to justify immediate action to protect or preserve life or avoid serious injury a dwelling may be entered without a warrant.

█ Here we conclude that Walzer's entry in the accused's residence was not reasonably justified under the facts of this case. Neither Walzer nor Shaheen thought the children were in danger. Walzer repeatedly testified he did not believe an emergency existed, and this is confirmed by his seeking additional instructions when no

one answered the door. The presence of an emergency demands immediate action on his part and not a delay to obtain further guidance. *See People v. Sutton,* 65 Cal. App.3d 341, 134 Cal.Rptr. 921 (1971).

In sum, this case presents a unique factual situation and almost any variance from the evidence presented could result in a different holding. The search was invalid. The charges are dismissed.

HEMINGWAY, Senior Judge, concurs.

MILLER, Judge, concurring in the result:

To me, the question upon which the validity of the search in this case hinges is not addressed by the majority opinion.

Regardless of the recalcitrant manner in which the on-scene military policeman carried out instructions relayed to him by his superiors, if those superiors instructed him to enter that house because they were honestly and reasonably convinced that the house contained the unattended children, who by virtue of the absence of any adult supervision were, in fact, being subjected to potentially immediate physical and/or emotional danger, neither the entry into the house nor the closets within the house violated the accused's Fourth Amendment rights. The search would have been valid either as an "emergency" under Mil.R.Evid. 314(i) or as a reasonable search, not constitutionally prohibited under Mil.R.Evid. 314(k). A child who is honestly and reasonably determined to require assistance to protect it from potentially immediate harm, is no less entitled to that assistance because an inexperienced functionary, dispatched to render the required assistance, fails to categorize his response as an emergency one.

I concur, however, in the result of my brethren, because I can find no indication from the evidence of record that the on scene military policeman's superiors, in fact, ordered this entry into base quarters based upon any such honest and reasonable determination of immediate danger to the children. To the contrary, the entry appears to have been ordered, not as a result of any sort of reasoned determination that the

unattended children in this case were in immediate danger of physical or emotional harm, but, rather, because the on-scene military policeman's superiors believed that the children's unattended status was violative of a non-existent post regulation, which they mistakenly believed prohibited parents from leaving children under 10 years of age unattended in post quarters.

Suspected violation of a post regulation simply does not justify a warrantless search such as was executed in this case. Accordingly, the seized marijuana plants were inadmissible.

I concur in the result of my fellow judges.