**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0207n.06

**No. 08-3906**

<table>
<tr><td>

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**UNITED STATES OF AMERICA,**

    **Plaintiff-Appellant,**

**v.**

**SHAWN McDANIEL,**

    **Defendant-Appellee.**

_____/

</td><td>

**FILED**
**Apr 02, 2010**
LEONARD GREEN, Clerk

ON APPEAL FROM THE UNITED
STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF OHIO

OPINION

</td></tr>
</table>

**BEFORE:**    **MERRITT, CLAY, and McKEAGUE, Circuit Judges**.

    **CLAY, Circuit Judge.**  The government appeals the district court's order granting Defendant Shawn McDaniel's motion for reconsideration and suppression of evidence, and the district court's order denying the government's motion to reconsider its grant of Defendant's motion for suppression of the evidence.  For the reasons set forth below, we **REVERSE** the district court's decision and **REMAND** the case for further proceedings in accordance with this opinion.

## I. BACKGROUND

### A.    Substantive Facts

    Defendant Shawn McDaniel was arrested on January 29, 2006 after police officers discovered crack cocaine, drug paraphernalia, and a .22 caliber pistol on his person.  At approximately 8:00 p.m.

on January 29, 2006, Cincinnati Police Officers Putnick and Grisby were on patrol in an area of downtown Cincinnati, known as Over-the-Rhine, when they came upon a 2001 Hyundai vehicle. The vehicle was stopped more than twelve inches from the left curb on Pleasant Street, in violation of municipal parking laws. Officer Putnick testified that several shootings had occurred in this area, which is a high crime area known for drug trafficking. Four individuals, including Defendant, occupied the vehicle. Officer Putnick pulled up next to the vehicle in order to tell the driver to move the car closer to the curb.

Putnick pulled forward until he was parallel with the rear seat of the Hyundai and at which time he observed Defendant, who was seated in the rear driver's side seat, make a startled expression. Officer Putnick testified that initially, no one in the car seemed to notice when he pulled alongside the Hyundai because they were talking and that when they finally did notice him, all four occupants stared with blank expressions as if surprised by the officers' presence. Officer Putnick also attested that he observed Defendant turn away very quickly and make a furtive movement as if he was putting something into his waistband. Officer Putnick testified that because of this observation and his experience that people often carry firearms in their waistbands, he believed Defendant was attempting to conceal a weapon.

Officer Grisby also saw McDaniel look up, apparently startled, and then turn his body away from the officers. To Officer Grisby, however, McDaniel's actions were indicative that he might get out of the car and run. Based on his testimony, it does not appear that Officer Grisby saw McDaniel make any movement toward his waist and he did not express any concern that McDaniel might be

2

armed. Rather, it seems that Officer Grisby was primarily concerned that McDaniel would attempt to flee the scene.

After observing Defendant's behavior, Officer Putnick moved the police cruiser to a tactical position at the rear right side of the Hyundai and turned on the cruiser's rear flashing lights. Officer Putnick then got out of the police cruiser and ordered the vehicle's occupants to keep their hands in plain view. Officer Grisby radioed dispatch to give their location, advise that they had stopped a car for an investigation, and request backup. Both officers approached the vehicle and Putnick obtained identification from the driver and from Defendant, explaining to the driver why the officers were talking to them. Officer Putnick continued to talk to the occupants of the vehicle while he waited for backup to arrive.

As soon as the backup officer, Officer Elsaesser, arrived, Officer Putnick asked Defendant to exit the vehicle. Defendant complied and Officer Putnick ordered Defendant to face the vehicle and place his hands on the roof of the car. After handcuffing Defendant, Officer Putnick patted him down, beginning at his waist to check for the presence of a firearm. Initially, Officer Putnick felt nothing at Defendant's waist so he began to pat down Defendant's arms. In doing so, Officer Putnick felt a gravel-like substance in McDaniel's right sleeve which, based on experience, he believed to be crack cocaine. Officer Putnick then searched McDaniel's person and when he went over the waist area again, he felt a gun, which slid down McDaniel's pant leg onto the ground. In addition to the gun and the crack cocaine, Putnick also discovered a digital scale and $667 in cash on Defendant's person.

**B.      Procedural History**

Defendant was indicted on four counts: Count One, being a Felon in Possession of a Firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); Count Two, being a Felon in Possession of a Firearm in a School Zone in violation of 18 U.S.C. §§ 922(q)(2)(A) and 924(a)(4); Count Three, Possession with Intent to Distribute Cocaine Base in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B)(iii), and 18 U.S.C. § 2; and Count Four, Carrying a Firearm in and Relating to a Drug Trafficking Offense in violation of 18 U.S.C. §§ 924(c)(1)(A)(i). Defendant moved to suppress all evidence flowing from the search and seizure, including the gun, drugs, money, and any statements he made, on the basis that the officers lacked reasonable suspicion to pat him down. The government argued that the stop and frisk of Defendant was within the bounds of *Terry v. Ohio*, 392 U.S. 1 (1968). The district court held a hearing on Defendant's motion and in an order entered on May 29, 2007, denied McDaniel's motion to suppress. On July 16, 2007, McDaniel pled guilty to Counts Three and Four, reserving his right to appeal the denial of his motion to suppress.

In 2008, Defendant moved the district court to reconsider its previous order denying his suppression motion. In an order entered on June 2, 2008, the district court granted Defendant's motion to reconsider and vacated the order denying McDaniel's motion to suppress based on this Court's decision in *United States v. Blair*, 524 F.3d 740 (6th Cir. 2008). The government submitted a motion to reconsider, which was denied. Defendant moved to vacate his plea and set a bond hearing, which resulted in him being released on an appearance bond with conditions. The government appeals the district court's order granting Defendant's motion for reconsideration and its suppression of the evidence as well as the district court's order denying the government's motion for reconsideration.

## II. DISCUSSION

### A. Standard of Review

When reviewing a suppression motion, this Court must consider evidence "in the light most likely to support the district court's decision," which in this case would be in the light most favorable to McDaniel. *United States v. Marxen*, 410 F.3d 326, 328 (6th Cir. 2005) (quoting *United States v. Navarro-Camacho*, 186 F.3d 701, 705 (6th Cir. 1999)) (internal quotation marks omitted). The reasonableness of a search and seizure is a question of law. *Blair*, 524 F.3d at 747. "The specific determination of whether reasonable suspicion . . . exists . . . is a mixed question of law and fact which we review de novo." *United States v. Campbell*, 549 F.3d 364, 370 (6th Cir. 2008) (citing *United States v. Torres-Ramos,* 536 F.3d 542, 550 (6th Cir. 2008)).

### B. Analysis

The Fourth Amendment guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In *Terry v. Ohio*, 392 U.S. 1 (1968), the Supreme Court evaluated whether police officers may conduct an investigatory stop and frisk search of an individual without violating the Fourth Amendment's ban on unreasonable searches and seizures. "[T]he touchstone of our analysis under the Fourth Amendment is always 'the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security.'" *Maryland v. Wilson*, 519 U.S. 408, 411 (1997) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 108-09 (1977) (quoting *Terry*, 392 U.S. at 19)). Determining reasonableness "depends 'on a balance between the public interest and the

individual's right to personal security free from arbitrary interference by law officers.'" *Id.* (internal quotation marks omitted).

Pursuant to *Terry*, an investigatory stop and frisk is constitutionally permissible if two requirements are met. First, there must be a proper basis for the stop. This requirement is satisfied in the context of an on-the-street encounter when the officer has a reasonable suspicion that criminal activity "may be afoot." *United States v. Arvizu*, 534 U.S. 266, 273 (2002) (internal quotation marks omitted). Second, to proceed from a stop to a frisk, the police officer must have reasonable suspicion that the person stopped is armed and dangerous. *Arizona v. Johnson*, 129 S. Ct. 781, 784 (2009).

In determining whether reasonable suspicion exists, we must look at the "totality of the circumstances" to determine whether the officer had a "particularized and objective basis" to suspect legal wrongdoing. *Arvizu*, 534 U.S. at 273. "The officer must be able to articulate more than an 'inchoate and unparticularized suspicion or hunch,' of criminal activity," *Illinois v. Wardlow*, 528 U.S. 119, 123-24 (2000) (internal quotation marks omitted), and may draw on his experience and specialized training "to make inferences from and deductions about the cumulative information available to [him] that 'might well elude an untrained person.'" *Arvizu*, 534 U.S. at 273; *accord Terry*, 392 U.S. at 21-22 ("[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion. . . . Anything less would invite intrusions upon constitutionally guaranteed rights based on nothing more substantial than inarticulate hunches . . . .").

The Supreme Court has observed that "most traffic stops resemble, in duration and atmosphere, the kind of brief detention authorized in *Terry*," *Berkemer v. McCarthy*, 468 U.S. 420, 439 n.29 (1984), and an ordinary traffic stop by a police officer is a "seizure" for purposes of the Fourth Amendment. *Delaware v. Prouse*, 440 U.S. 648, 653 (1979). The Supreme Court has also noted that "investigative detentions involving suspects in vehicles are especially fraught with danger to police officers." *Michigan v. Long*, 463 U.S. 1032, 1047 (1983).

In the traffic stop setting, the first *Terry* condition—a lawful investigatory stop—is met when the police may lawfully detain a vehicle and its occupants pending inquiry into a vehicular violation. *Johnson*, 129 S. Ct. at 784. "The police need not have, in addition, cause to believe any occupant of the vehicle is involved in criminal activity." *Id.* To justify a patdown of the vehicle's occupants, the police "must harbor reasonable suspicion that the person subjected to the frisk is armed and dangerous." *Id.*; *accord Long*, 463 U.S. at 1047-48 ("[P]olice may order persons out of an automobile during a stop for a traffic violation, and may frisk those persons for weapons if there is a reasonable belief that they are armed and dangerous."); *Terry*, 392 U.S. at 27 ("The officer need not be absolutely certain that the individual is armed; the issue is whether a reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger.").

We conclude that the totality of the circumstances warranted Officer Putnick's reasonable suspicion that McDaniel was armed and dangerous. The police officers initially approached the vehicle because of a parking violation and there is no dispute that the car was illegally parked. While stopping to ask the driver of the vehicle to move closer to the curb, the officers became suspicious

after observing Defendant's behavior. Specifically, the officers noticed that McDaniel appeared startled and turned his body away from them. Officer Putnick also saw McDaniel make a furtive movement as if he was putting something into his waistband. Putnick believed, based on his experience, that Defendant's behavior was consistent with an attempt to conceal a weapon. Based on these facts, we conclude that Officer Putnick had a reasonable suspicion that McDaniel was armed and dangerous. Consequently, his subsequent patdown of McDaniel did not constitute an unreasonable search and seizure under the Fourth Amendment.

We note that *United States v. Blair*, the case upon which the district court relied in suppressing the evidence obtained from the search, poses no obstacle to our conclusion. *Blair* addressed whether certain circumstances surrounding a traffic stop—the time of night, the defendant's presence in a high-crime area, and nervous behavior—were enough to constitute reasonable suspicion of ongoing criminal activity sufficient to justify prolonging a traffic stop until a canine unit arrived. The issue in the instant case is whether an officer had reasonable suspicion that an individual was armed and dangerous sufficient to justify a patdown search. These two inquiries are distinct as the "interest of the police officer in taking steps to assure himself that the person with whom he is dealing is not armed with a weapon that could unexpectedly and fatally be used against him" is a "more immediate" interest than the governmental interest in investigating crime. *Terry*, 392 U.S. at 23. Accordingly, *Blair* is distinguishable and the district court erred in relying upon *Blair* as the basis for its suppression of the evidence in this case.

Because the stop for purposes of enforcing the local parking ordinance was lawful and because Officer Putnick had reasonable suspicion that Defendant was armed and dangerous, we

conclude that the district court erred in granting Defendant's motion for reconsideration, suppressing the evidence seized during the traffic stop, and denying the government's motion for reconsideration.

### III. CONCLUSION

For these reasons, we **REVERSE** the district court's decision granting Defendant's motion for reconsideration, its suppression of the evidence obtained during the search, and its denial of the government's motion for reconsideration, and **REMAND** the case for further proceedings consistent with this opinion.