[Cite as *State v. Stanford*, 2023-Ohio-1011.]

# IN THE COURT OF APPEALS
# FIRST APPELLATE DISTRICT OF OHIO
# HAMILTON COUNTY, OHIO

| | | |
|---|---|---|
| STATE OF OHIO, | : | APPEAL NO. C-220138 |
| | | TRIAL NO. B-2002441 |
| Plaintiff-Appellee, | : | |
| vs. | : | |
| | | *O P I N I O N.* |
| TONY STANFORD, | : | |
| Defendant-Appellant. | : | |

Criminal Appeal From: Hamilton County Court of Common Pleas

Judgment Appealed From Is: Affirmed

Date of Judgment Entry on Appeal: March 29, 2023

*Melissa A. Powers*, Hamilton County Prosecuting Attorney, and *Paula E. Adams*, Assistant Prosecuting Attorney, for Plaintiff-Appellee,

*Arenstein & Gallagher* and *Hal R. Arenstein*, for Defendant-Appellant.

**WINKLER, Judge.**

{¶1} Defendant-appellant Tony Stanford appeals his convictions for cocaine trafficking and possession. Because we determine that the trial court did not err in overruling Stanford's motion to suppress, and that the trial court did not err in sentencing Stanford under the Regan Tokes Law, we affirm.

## Background

{¶2} In May of 2020, Cincinnati police spotted a "surf blue" Dodge Caliber traveling on the roadway near the neighborhood of Avondale. Police noted the unusual vehicle matched the description of a vehicle that had been involved in a shooting in downtown Cincinnati a few days prior. Several uniformed police officers initiated a traffic stop of the vehicle. The driver of the vehicle, Stanford, slowly rolled the vehicle to a stop, and one of the officers believed he saw Stanford throw an object out of the vehicle.

{¶3} Police approached Stanford's vehicle with their guns drawn, and one of the officers instructed Stanford to throw the keys out of the window, and to walk backward toward the officers with his hands up. Stanford complied, and an officer handcuffed Stanford and placed him in the back of the cruiser. Officers attempted to contact the detective investigating the shooting while Stanford remained in the back of the police car. At the same time, an officer used a drug dog to canvass a grassy area near the side of the road where Stanford had stopped his vehicle.

{¶4} One of the police officers told Stanford that Cincinnati police had been on the lookout for his vehicle in connection with an earlier shooting. The officer told Stanford that police had been looking for a license plate that matched Stanford's vehicle, although the officer later testified that he did not believe investigators had

known the license-plate number of the suspected vehicle. The officer indicated to Stanford that he was waiting to hear from investigators before he could let Stanford leave or before he could proceed with a search of Stanford's vehicle. The officer testified that he did not want to move forward with the investigation until he spoke to the detectives in charge of the shooting investigation, because he was concerned about contaminating the potential crime scene—the vehicle itself.

{¶5} According to the officer's body-worn camera, approximately 16 minutes after the initial stop, the officer took a phone call with the investigating detective's partner in relation to the earlier shooting. During the call, the officer and the detective discussed a different vehicle that had been stopped by police, also in connection with the shooting. The officer testified that the vehicle was a "Chevy HHR." The officer then told the detective that he intended to issue a "contact card" and "get things rolling." After the phone call ended, an officer used the drug dog to conduct an open-air sniff of the perimeter of Stanford's vehicle. The drug dog alerted to the presence of drugs inside the vehicle. Police then conducted a search of Stanford's vehicle, which revealed cocaine and a large amount of cash.

{¶6} The state indicted Stanford for one count of possession of cocaine and one count of trafficking in cocaine, both first-degree felonies. Stanford filed a motion to suppress, arguing that police had violated his Fourth Amendment rights when they unreasonably detained him prior to using a drug dog to conduct an open-air sniff of Stanford's vehicle. After a hearing, the trial court overruled Stanford's motion to suppress, and Stanford pleaded no contest to both charges. The trial court imposed an indefinite sentence of three to four-and-a-half years in prison on the trafficking

count and a concurrent term of three years in prison on the possession count. Stanford appeals.

### Motion to Suppress

{¶7}     In his first assignment of error, Stanford argues that the trial court erred in overruling his motion to suppress, because the police unconstitutionally prolonged the traffic stop before they used the drug dog to conduct an open-air sniff of Stanford's vehicle.

{¶8}     "Appellate review of a motion to suppress presents a mixed question of law and fact." *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, 797 N.E.2d 71, ¶ 8. "When considering a motion to suppress, the trial court assumes the role of trier of fact and is therefore in the best position to resolve factual questions and evaluate the credibility of witnesses." *Id.* Therefore, this court must accept the trial court's findings of fact if those findings are supported by competent, credible evidence in the record. *Id.*

{¶9}     Under the Fourth Amendment, police must have reasonable suspicion of criminal activity prior to conducting an investigatory stop of a vehicle. *Terry v. Ohio*, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). "[P]olice are permitted to conduct a *Terry* stop to investigate completed felonies if they have reasonable suspicion to believe that the vehicle stopped was involved in criminal activity and the stop may produce evidence of a crime * * *." *United States v. Marxen*, 410 F.3d 326, 332 (6th Cir.2005). In determining whether police have reasonable suspicion that a vehicle may have been involved in a past felony, which would justify a *Terry* stop of that vehicle, courts have looked to whether the description of the vehicle used in the

4

past crime "describes a sufficiently narrow class of vehicles." *United States v. Babb*, 77 Fed.Appx. 761, 767 (6th Cir.2003).

{¶10} Stanford does not challenge the basis of the investigatory stop by police. The arresting officer testified that Stanford's "surf blue" Dodge Caliber was an unusual vehicle that had only been manufactured for two years. The vehicle also had tinted windows. Stanford's vehicle matched the description of a vehicle that police had been looking for in connection with a recent shooting. Based on the rarity of Stanford's vehicle, police had reasonable suspicion that Stanford's vehicle may have been used in the earlier shooting, which justified the stop.

{¶11} The question then becomes whether police unreasonably prolonged the investigative stop of Stanford's vehicle to use the drug dog.

{¶12} Police use of a drug dog to conduct an open-air sniff of a lawfully-stopped vehicle does not constitute a search under the Fourth Amendment. *Illinois v. Caballes*, 543 U.S. 405, 409, 125 S.Ct. 834, 160 L.Ed.2d 842 (2005). Nevertheless, the vehicle stop must be "limited in scope and degree of intrusion by its purpose and may last no longer than reasonably necessary to effectuate the purpose of the stop." *State v. Rogers*, 1st Dist. Hamilton No. C-210666, 2022-Ohio-4535, ¶ 22, citing *United States v. Rodriguez*, 575 U.S. 348, 354, 135 S.Ct. 1609, 191 L.Ed.2d 492 (2015); *United States v. Sharpe*, 470 U.S. 675, 105 S.Ct. 1568, 84 L.Ed.2d 605 (1985). Thus, police cannot prolong a traffic stop to conduct a drug-dog sniff, unless police have reasonable suspicion. *Caballes* at 407-408.

{¶13} In *Rodriguez*, a police officer initiated a traffic stop of the defendant's vehicle after the defendant's car swerved off the road. The officer intended to issue the defendant a warning, but the officer decided to call for backup from a second

5

officer so that he could use a drug dog. The officer held the defendant for seven or eight minutes after the completion of the traffic-violation investigation before the second officer arrived. The *Rodriguez* court determined that the "critical question" under the Fourth Amendment is whether the use of the drug dog prolonged the stop. *Rodriguez* at 357.

{¶14} According to Stanford, the police detained Stanford beyond the shooting investigation in order to conduct the drug-dog sniff. Stanford analogizes his case to *United States v. Chivers*, S.D.Ohio No. 1:19-cr-119, 2020 U.S. Dist. LEXIS 178314 (September 28, 2020). In *Chivers*, police initiated a traffic stop of the defendant's vehicle for a speeding violation. The police investigated the traffic violation, and instead of issuing a ticket, police questioned the defendant and the other vehicle occupants for a second time about where they were going and what they were doing. The officers then decided to call for a drug dog based on the inconsistent answers from the defendant and the other occupants. The *Chivers* court determined that police lacked reasonable suspicion to justify questioning the vehicle occupants a second time.

{¶15} The facts of *Chivers* are not on point with this case. This case does not involve a routine traffic stop where police had to wait for the arrival of a drug dog. The facts elicited from the motion-to-suppress hearing support the trial court's findings that police stopped Stanford's vehicle because his unusual vehicle matched a description of a vehicle that had been involved in a recent shooting, and the drug dog arrived on the scene contemporaneously with the initial stop. While waiting for detectives to return their call, police used the drug dog to sniff a grassy area near the vehicle, based on an officer's belief that Stanford had thrown an object out of the

6

vehicle window. Once the drug dog completed searching the hill, and after officers spoke with the detectives regarding the shooting investigation, police immediately used the drug dog to sniff Stanford's vehicle.

{¶16} Police did not prolong Stanford's detention prior to using the drug dog; therefore, the trial court did not err in overruling Stanford's motion to suppress. We overrule Stanford's first assignment of error.

## Constitutionality of the Regan Tokes Law

{¶17} In his second assignment of error, Stanford argues that his indefinite prison sentence imposed under R.C. 2901.011, the Regan Tokes Law, is unconstitutional.

{¶18} Stanford argues that the Regan Tokes Law violates the separation-of-powers doctrine and Due Process. These same arguments were considered and rejected by this court in *State v. Guyton*, 1st Dist. Hamilton No. C-190657, 2022-Ohio-2962, *appeal accepted*, 168 Ohio St.3d 1418, 2022-Ohio-3752, 196 N.E.3d 850. Therefore, we overrule Stanford's second assignment of error.

## Conclusion

{¶19} Having overruled Stanford's assignments of error, we affirm the judgment of the trial court.

Judgment affirmed.

**ZAYAS, P.J.,** and **BERGERON, J.,** concur.

Please note:

The court has recorded its own entry on the date of the release of this opinion.

7